Chief Justice Robertson-
delivered the Opinion of the Court—
Judge Ewing was not present when the cause was submitted, and took no partin the decision.
Patrick H. Darby, deceased, by his last will, directed that his whole estate, real and personal, should constitute a fund for the payment of his debts, and then devised it to Mary W. Brown, subject to that charge.
The devisee having renounced the devise to her, the legal title to the real estate of the testator descended to his heirs. And various tracts of land which thus descended, having been bought by several persons, under a fieri facias which had been issued on a judgment obtained by John B. Helm against Darby’s heirs and administrators with the will annexed, the Circuit Court, on the motion of one of the administrators, quashed the sales and the return on the execution, on the ground, as we presume, that the land was equitable assets, and therefore was not subject to sale under an execution on a judgment.
Had the legal title been devised to the executors or to others in trust for the payment of the testator’s debts, there could now be no doubt, that the land would not have been legal assets, or subject to sale in virtue of an *186 execution on a judgment against the executors, but would have been equitable assets, subject to distribution, only in equity, among all the creditors, pari passu, without any regard, to legal priority.
A mere charge upon land, created by will, for the payment of testator’s debts, makes the devisee or heir a trustee, and entitles the executor to the proceeds for the pay ment of debts — > by distribution, pro rata, in equity — and the land, or proceeds cannot be reached by an ex’on creditor, without the aid of the .'chancellor.
'Wheresuchprop erty as is not assets in the hands of an executor, is, by will, made subject to a testator’s debts, it becomes a trust fund, of which the Chancellor has exclusive jurisdiction; one creditor can gain no advantage over the others by suit against the exec’or or heirs; <the estate will
And, although there is some oscillation and contrariety in the adjudged cases, it is now well settled, that a power given to an executor by will, to sell real estate for payment of debts, converts the estate into equitable assets in his hands, even though the descent was not broken. The cases of Freemoult vs. Dedire, 1 Pr. Wms. 430, and of Plunkett vs. Penson, 2 Atk. 290, in which it was said, that an estate descending to an heir, "charged expressly by the will of the ancestor with the payment of his debts, was not equitable assets in the hands of the executor, but was legal assets in the hands of the heir, have been overruled by the cases of Burt vs. Thomas (Court of Exchequer;) Silk vs. Prime, Dickens, 384; Hargrave vs. Tendall, 1 Brown’s Chy. Cases, 136; Batson vs. Lindegreer,2 Ib. 94; Bailey vs. Ekins, 7 Vesey, 319; Shepherd vs. Lutwidge, 8 Ib. 26; Clay vs. Willis, p.103 Am. Ed. Mod. Engl. Com. Law Repts; Benson et al. vs. Le Roy, 4 Johnson’s Ch’y. Repts. 657.
The doctrine established in these last cases, is that a mere charge on land, created by will, for payment of the testator’s debts, converts the devisee or heir into a trustee, entitles the executor to the proceeds for paying the debts, and makes the estate equitable assets, distributable umly in equity, upon the equitable principle of equality.
Whenever a testator subjects to the payment of his debts, property which is not, according to the common law, legal assets in the hands of his executor, a creditor cannot reach it without the aid of a court of equity, and therefore it is called equitable assets, and is distributable pro rata.
Prior to the enactment of the statute of 3 W. & M. against fraudulent devises, a devise of land for the payment of debts entitled all. the creditors to be paid pari passu, because the presumption arising from such a devise, was, that it was the intention’ of the testator to do equal justice to all his creditors, without preference or distinction. Anon. 2 Ch. Ca. 54. That statute did not *187 change that doctrine, but only fortified it by legislative recognition. The object of the statute was to defeat fraudulent devises to the prejudice of creditors; for, according to the common law, a creditor of the testator could not subject to the payment of his debt land absolutely devised to a stranger. But the statute was never construed to apply to devises for the payment of debts, because such devises were perfectly consistent with its object and policy.
Darby’s JLd’r. not be liable to his execution; he must come in with the other creditors for an equal distribution. A renunciation by the devisee, Sr descent of the estate to the heirs,, does not change the rule; nor does the fact, that the execution creditor is a cestui que trust
That statute re-enacted, substantially, in this state, gives full- effect to a devise of land, and to an appointment or power to sell land, and to a charge on land, by last will, for payment of debts, and declares that it shall be held subject to the trust, appointment, or charge, until the purpose of the testator shall have beenfully accomplished.
This alone would seem to be a sufficient foundation for the doctrine maintained in the modern cases which have been cited.
But there is another and a broader ground to rest upon, and that is — the intention of the testator. A charge by will on land for payment of debts is, in substance, a devise of the land for the purpose of paying the debts; and being a trust, the Chancellor will take hold of it, and see that it is equitably discharged; and the land being subject to a trust, cognizable only by a Court of Equity, is not subject to sale under an execution on a judgment of a common law court, because otherwise the trust itself, and the power of the Chancellor over it, might, and generally would, be frustrated. In such a case, a Court of Equity will regard the heir or devisee of the mere legal title charged with debts, as a trustee quoad those debts, and will consider his estate as a trust estate, and, of course, equitable assets only. A creditor cannot gain preference or advantage over any other creditor, by obtaining a judgment against the devisee or heir, but must come into equity to enforce the trust, and have a just and rateable distribution of the trust fund. This is the approved modern doctrine, sustained by principle, justice and analogy; and we therefore feel disposed to recognize it as the law of the land.
Land devised for payment of debts being levied on and sold, under ex’on against the heirs, fyc. an administrator with the will annexed may maintain a motion to quash the sale — as he has authority to sell the land— unless the chancellor orders a sale.
Had Mary W. Brown, the devisee, never renounced, surely she would have held the legal title as a trustee for all the creditors, and subject only to the action and control of a Court of Equity; and her renunciation could not have changed the nature of the estate; the heirs took it, as she would have taken it, as a trust for the creditors until all the debts had been paid. And such a trust estate is not liable to execution on a judgment against the trustee. The fact that the creditor in the execution is a cestui que trust, can make no difference: his .rights must be enforced like those of all other creditors; — and he can reach the trust fund in the hands of the trustee, only by proceeding in equity for enforcing the trust.
It is true, that all the cases to which we have referred? were in Equity: but the principle on which they were decided, would apply as effectually in a court of law. For if an heir, or devisee, hold as a trustee for creditors, the trust estate canáot be liable to be sold under an execution on a judgment in favor of any creditor or other person.
We are therefore of the opinion, that the lands which were sold in this case were equitable and not legal assets, and that, though the legal title descended to the heirs, yet, as it descended in trust for the ancestor’s creditors, and subject to the power of the administrators with the will annexed, it was not liable to be sold under the execution, either as against the administrators or the heirs.
And we are of the opinion, also, that, in consequence of the power delegated by the will to the executors nominated therein, and which passed by operation of law to the administrators cum testamento, and in consequence also of the liability of those administrators for the just and equal distribution and application of the trust found, according to the presumed intention of the testator, they or either of them had a right to ask for a quashal of the sale of the land. They have power under the will, to sell the land for payment of debts;' and they alone have such power, unless the Chancellor, on proper application, decree a sale.
But there was a defect of parties: as the ground for quashing was extraneous, all who were interested, and *189 who might be affected by the judgment on the motion, ought to have been made parties.
The merits of a case are not, in general, considered, where there is a defect of parties; but it is sometimes done, where the counsel unite in requesting it.
And therefore, as the heirs of Darby, and all the purchasers under the execution were not parties, the judgment of the Circuit Court must, on that ground alone, be reversed.
Having come to this conclusion, we should not, contrary to our established practice when there is a defect of proper parties, have considered the merits of the case, had not the counsel on both sides requested that we should do so.
Wherefore, it is considered that the judgment of the Circuit Court be reversed, and the cause remanded, with instructions to dismiss the motion without prejudice.