Owens, &c.
vs
Cowan's Heirs,
&c.

---

CHANCERY.

## Owens, &c. *vs* Cowan's Heirs; Beatty *vs* Same; Carneal *vs* Same.

WRITS OF ERROR TO THE PULASKI CIRCUIT.

*Sale of infants' real estate. Executors. Devisees. Vendor and vendee. Damages.*

Case 42.

October 14.

JUDGE BRECK delivered the opinion of the Court.

Case stated.

In 1811, the last will and testament of Thomas Carneal, was admitted to record in the Franklin County Court. The testator, after devising specifically, a large portion of his estate, makes the following provision:

"The residue of my estate, consisting of lands in the States of Ohio and Kentucky, and all money bonds, I convey in trust, unto my friend and relative, Thomas Todd, for the express purpose of paying my debts, of every description, which I desire may be sold at such credit as he may judge right, between the creditors and the estate."

Thomas Todd and six other persons were appointed executors.

At the same time the will was proved, Todd and all the other executors, by a writing under their hands and seals, renounced their right and refused to qualify as executors, or in any manner to take upon themselves the execution of the will. Todd also formally renounced, in open Court, the devise made to him in trust, for the payment of the testator's debts, and refused to accept the trust; and thereupon, administration, with the will annexed, was granted to James Coleman. The testator left three children, Thomas D. Carneal, S. H. Coleman, the wife of the administrator, Coleman, and Alice Carneal, who subsequently married James D. Breckinridge.

In 1813, William G. Cowan purchased from Thomas Bryan, representing himself as the agent of Carneal's heirs, 317 acres of land in the county of Pulaski, being part of a tract of 713 acres, patented in the name of the testator, Thomas Carneal. Bryan executed a bond to Cowan for a conveyance. Shortly afterwards, Coleman, the administrator, endorsed upon this bond that the consideration for the land had been all paid by Cowan, and bound himself to convey the same by general warranty deed, as soon as a proper survey was brought forward.

Cowan moved upon the land shortly after his purchase, and continued in possession thereof till his death, in 1835, and after his death, it remained in possession of his heirs till February, 1840, when, upon their petition, 206½ acres thereof, the residue having been allotted to the widow as dower, was sold under a decree of the Pulaski Circuit Court, and John Owens became the purchaser thereof, and obtained the possession.

In June, 1841, Owens and his surety for the purchase money for the land, exhibited this bill, seeking to set aside the sale, upon the ground that it was irregular and void, that Cowan's heirs had no title to the land, and that one Beatty claimed and was in possession of a portion of it. They charge that the title was in Thomas D. Carneal, the only surviving heir of the patentee, Thomas Carneal, except as to the part claimed by Beatty. Owens also charges that the heirs of Cowan, well knowing the defects in their title, had fraudulently concealed them from him at the time of his purchase.

*The object of the bill of Owens.*

Answer of Cow-
an's heirs made
cross bill against
Carneal, &c.

Cowan's heirs answer, insist upon the validity of the sale under the decree, deny any fraudulent representations or concealment in regard to their title, and insist that the complainant, Owens, had long resided near the land, and knew all about the title. That he knew of the pretended claim to some part of it set up by Beatty. They pray that his claim may be quieted and if Beatty is ascertained to be in possession of any portion of the 206½ acres, that he may be decreed to surrender it. They make their answer a cross bill and make Thomas D. Carneal, &c. defendants. They alledge the sale to their ancestor by Coleman, as administrator with the will annexed of Thomas Carneal; that the sale was made for the payment of Carneal's debts; that the purchase money was all paid immediately after the purchase, and they exhibit a deed from Coleman, as administrator with the will annexed, of Thomas Carneal, but made subsequent to the exhibition of complainant's bill. They pray a conveyance from T. D. Carneal, if necessary to perfect their title, and rely upon the length of possession by them and their ancestor.

Th. D. Carneal's
answer and cross
bill against Cowan's heirs.

Carneal answers and resists the claim set up by Cowan's heirs, denies that Coleman, as administrator with the will annexed, had any authority to sell the land to Cowan, or that Bryan had any authority. He states that shortly after the probate of the will of his father and before the purchase of Cowan, he transferred to Coleman all his interest in the estate, with some exceptions. That subsequently his sisters both departed this life, his sister Coleman leaving an infant son, who also died while an infant. That his sister Breckinridge died without issue, and that he thus became the sole surviving heir of his father. That Cowan's heirs, if entitled to any interest in the land in contest, were only entitled to one third absolutely or in fee, and to an estate during the life of Coleman, in another third. He insists that Cowan and his heirs had been tenants in common with him, and should account for rents and profits, and makes his answer a cross bill, and prays a division of the land, &c. He also avers that in 1815, Coleman was removed as administrator, and that he was himself appointed.

Beatty claims a portion of the land in contest, under Carneal's title, and relies upon a Sheriff's sale, in virtue of an execution against Th. D. Carneal.

The Court below dismissed the complainant's bill, so far as he sought a rescision of his contract of purchase, and dissolved the injunctions, which had been awarded him, restraining the collection of the purchase money. The heirs of Cowan were decreed to convey to him, by deed with general warranty; and Beatty, by quit claim as to the supposed interference between the tract claimed by him and the Cowan tract, and a *habere facias* is directed to be issued upon the application of the complainant, to enable him to obtain possession of the small portion thereof in the actual possession of Beatty.

The cross bill of Carneal is dismissed at his cost.

To reverse this decree writs of error are severally prosecuted by Owens, Carneal and Beatty, and Cowan's heirs assign cross errors.

In the revision of the case the objections made to the decretal sale, under which Owens purchased, will be first noticed.

Five of the heirs who petitioned for a sale, were infants, and petitioned by their statutory guardians; J. W. Hargrave and Sarah Cowan were guardians jointly, for three of the infants. It is objected that Hargrave only made affidavit to the petition, though the other guardian united in it; affidavits were made by the guardians of the other two.

The objection is very clearly not available, even if there had been no affidavit by either of the guardians, as all parties, in answer to the complainant's bill, confirm the sale and pray that it may be enforced, and it appearing for the interest of the infants that it should be, the Chancellor, on that account, as has been decided by this Court in analogous cases, would not disturb it. But both guardians uniting in the petition, and the affidavit by one, we think, was a substantial compliance with the requisitions of the statute.

2d. It is objected that no bond was executed by the guardians, either prior or subsequent to the sale. But the Court required the commissioner appointed to make

OWENS, &c.
*vs*
COWAN'S HEIRS,
&C.

Decree of the
Circuit Court.

Two guardians of infants uniting in a petition for the sale of infant's estate, and one swearing to the petition, is a substantial compliance with the statute.

The sale of infant's real estate is not invalid because the guar-

dian did not execute bond as prescribed by the statute before the decree or sale if the fund was still in the power of the Chancellor. He should secure the fund to the ward by appropriate bond before suffering it to pass into the hands of the guardian.

the sale, to execute bond with security, before he proceeded to act under the decree, and in a sufficient penalty for the protection of all the heirs. The bonds for the purchase money were directed to be taken payable to the commissioner. Besides, when the complainant exhibited his bill, the petition case was within the power of the Chancellor, and for aught that appears in the record, may be so still. It was in the power of the Chancellor, before permitting the proceeds of the sale to go into the hands of the guardians, to require from them sufficient bonds for the additional protection of their wards. And such bonds, it may be presumed, would have been required.

The failure to require bonds from the guardians, did not affect the jurisdiction of the Court, nor, as the whole case and the proceeds of the sale were still within the control of the Court, did it oppose any obstacle to the confirmation of the sale, or constitute a sufficient reason for avoiding it by the complainant. Some other objections questioning the correctness and regularity of the proceedings and the validity of the sale, are urged, but they are deemed untenable and need not be noticed.

The objections to the title present more difficulty. It

Where a devise is made of lands to a trustee to pay debts, &c. and he refuses to accept the trust, the title devolves upon the heirs of the devisor, subject to the debts, &c. (3 Dana, 185.)

is evident that the heirs, at the exhibition of the complainant's bill, were not vested with the legal title to the land, but we are inclined to the opinion they had a valid and perfect equity. By Todd's renunciation of the devise to him, and his refusal to accept the trust, the title vested in the heirs, charged, however, with the payment of the testator's debts: Helm, &c. vs Darby's administrator, (3 Dana, 185.)

The 44th section of the act of 1797, (1 Stat. Laws, 666,) provides, that "the sale and conveyance of lands devised to be sold, shall be made by the executors, or such of them as shall undertake the execution of the will, if no other person be thereby appointed for that purpose; or, if the person so appointed shall refuse to perform the trust, or die before he shall have completed it."

—And where land is devised to ex'r. in trust to be

Upon the refusal of Todd to perform the trust, the power to sell devolved upon the executors. But as they all refused to qualify, the administrator, with the will an-

nexed, under the act of 1810–11, (1 *Stat. Laws*, 671,)
was vested with the power. If the sale made to Cowan
was made by Coleman as administrator, and we think it
may be so considered, it was a valid sale. He received
the purchase money, and covenanted to make the con-
veyance. He proves that it was necessary to sell the
land for the payment of the testator's debts, and that he
sold it as administrator.

He moreover proves, that Bryan, in making the sale,
acted as his agent, and that he, Coleman, received the
purchase money, and confirmed it. While Coleman was
administrator, a conveyance by him as such, would have
passed the legal title ; but after his removal, we are not
satisfied that he would still be authorized to convey.

The deed, therefore, made by him to Cowan's heirs
since the commencement of this suit, would only convey
such title as he held or could convey, irrespective of his
character as administrator. Upon the hypothesis, that
by the renunciation of the devise to Todd, and his refusal
to accept the trust, the title vested in the heirs, the deed
from Thomas D. Carneal, made in 1811, vested in Cole-
man the title to one undivided third part of the land in
contest. He was also entitled to an estate during his
life, to another third, in right of his wife, by the courtesy.
Upon her death, her title to one third, subject to the cour-
tesy, descended to her son, who dying while an infant,
the title passed to Thomas D. Carneal and Mrs. Breckin-
ridge. And upon the death of Mrs. Breckinridge with-
out issue, her title vested in Thomas D. Carneal, who
thus became invested with the title as to two thirds, sub-
ject to the life estate in Coleman as to one third.

The chancery proceeding in 1815, by which Todd was
decreed to convey, and did convey to Th. D. Carneal all
the title and interest, if any, which was vested in him by
the will, was unnecessary, and nothing passed by it. The
title was previously vested in the heirs. Nor can the
agreement among the heirs to renounce the will and hold
by descent, have any bearing upon this controversy.

So far as the title was in Carneal, it was held in trust
for Cowan and his heirs. It did not enure to the benefit
of Coleman in virtue of Carneal's conveyance to him in

Owens, &c.
*vs*
Cowan's Heirs,
&c.

sold to pay debts,
and the trustee
refuses to exe-
cute the trust,
the admr'r with
the will annexed
may sell under
the authority of
the act of 1810,
(1 *St. Law*,671.)

The conveyance
of an administra-
tor with the will
annexed, made
after he is super-
ceded by another
adm'r. passes no
title except such
as he may have
independently of
his character as
administrator.

Owens, &c.
vs
Cowan's Heirs,
&c.

1811. By that deed, he transferred the interest only which he then possessed. It had no reference to, and would not pass the subsequently accruing title and interest.

It results from this view of the case, that the Court below erred in not decreeing Carneal to convey to Cowan's heirs whatever title might be vested in him, in the tract purchased by their ancestor from Coleman, or Bryan as his agent, or at least to convey to Owens to the extent of the 206½ acres. Cowan's heirs held under Carneal's title, by an executory contract, and Owens had a right to require that he should be vested with the legal title. The necessary parties were before the Court, and the title should have been perfected accordingly. It also results that the cross bill of Carneal was properly dismissed.

The allegation by the complainant, of a fraudulent concealment by the adult heirs, of the nature and condition of their title, is denied, and not sustained by the proof. Their ancestor had been in possession of the land at the time of the sale, claiming it as his own, near thirty years. It had been twenty years, or very nearly, since Thomas D. Carneal had instituted an ejectment for the recovery of the land, and had failed in the effort and abandoned it. Under such circumstances, the heirs might well suppose their title valid.

As to the claim of Beatty, it is in proof that Owens had resided near the land, and knew all about it, and that really the only question was in regard to the actual boundary of the Cowan tract.

Beatty claims under a Sheriff's sale, made in virtue of an execution against Thomas D. Carneal, as trustee, administrator with the will annexed, and only surviving heir of Thomas Carneal, deceased. It is questionable whether the land, charged as it was with the payment of the debts of the testator, was subject to execution, and whether any thing passed by the sale. According to the principle settled in *Helm and Darby's administrator, supra,* the land was equitable assets in the hands of the administrator, and not subject to be sold under execution. But waiving that question, it is manifest from the Sheriff's deed, and from the testimony, that the land sold by

Can lands devised for the payment of debts be sold under execution or judgment against the heir?—Qr. See *Helm* vs *Darby*, (3 *Dana,* 185.)

the Sheriff, and embraced in his deed, was not intended to constitute, and does not constitute any part of the 317 acres purchased by Cowan. The boundary in the deed is to run "with the line of a survey of three hundred and seventeen acres, sold to William G. Cowan, and whereon the said Cowan now (then) resides; thence with the line of Cowan's survey to the beginning." These lines of Cowan are satisfactorily established, and as established, Owens gets his 206½ acres. It is true Beatty claims to run within Cowan's lines as established, and it appears he has in actual possession, within the lines of Cowan, at one corner, a small piece of about an acre, which had been previously in possesion of Cowan. We are of opinion the decree is right in requiring Beatty to release to Owens any claim or title he may have to any portion of the land purchased by Owens, as it clearly appears, as we have seen, that the tract so purchased by him is all within the well established lines of Cowan's survey of the 317 acres, made long before the sale under execution. The decree in that respect, would have been right, even if it were conceded that the Carneal title passed by the Sheriff's deed to the portion of the Cowan tract, as claimed by Beatty. Cowan, as has been shown, had the elder and superior equity, and he was in actual possession, claiming up to the extent of his lines at the time of the Sheriff's sale. The purchaser, therefore, had notice of Cowan's equity, and if he acquired the title of Carneal to any portion of Cowan's tract, in equity he would be bound to surrender it. Beatty occupies no better attitude than Goggin, who was the purchaser at the Sheriff's sale. We are inclined, also, to the opinion, that the Chancellor was right in requiring Beatty to surrender to Owens the small field in his possession, and therefore, that there is no error in the decree, which he can render available.

Finally, we come to the conclusion that the Court was right in sustaining the sale made to Owens, but erred in not requiring Carneal to release his title. The cross error of Cowan's heirs, that the complainant's injunction should have been dissolved with damages, and his bill dismissed with cost, is not available.

Where a vendee files his bill alledging a defect of title in vendor and the title be perfected after the filing the bill or obtained by cross bills in the same suit, no

CANAL COMPANY
*vs*
COMMONWEALTH

damages should
be awarded.

So far as the decree dismisses the cross bill of Carneal, it is affirmed, and it is also affirmed upon the writ of error prosecuted by Beatty. Upon the writ of error prosecuted by Owens, &c., it is reversed for the error indicated, and the cause remanded for further decree, consistent with this opinion.

B. & A. Monroe and Goodloe for Owens, &c.; Harlan & Craddock and Fox for Cowan's heirs et al.

---

MOTION.

Case 43.

October 17.

Case stated.