Judge Ewing

delivered the Opinion of the Court.
On the 26th of March, 1830, William R. Payne, as the surety of Martin Grider and Samuel Campbell, in a replevin bond, paid to the Bank of the Commonwealth two hundred and fifty five dollars and fifteen cents—the balance due on an execution which issued thereon.—Grider and Campbell died—the latter having made his will, which he commences in the following language: “As the law subjects my estate to the payment of my debts, which I conceive to be just, I request my executor hereafter named, will dispose of so much of it as will pay them.” And—being an old bachelor—he then proceeds to devise his estate to his neices and nephews—giving lot No. 45, in Bowlinggreen, to Sarah and David Campbell; and the residue of his estate to Mary Jane and Margaret Campbell. But willed that his sister Sarah Campbell, widow of his deceased brother, David, should have undisturbed possession of the houses and lots where she then lived, until Mary Jane and Margaret, or one of them, should arrive to the age of twenty one or marry.” And appointed Eli Barkley his executor; who took upon himself the execution of the will.
Payne filed his bill against the representatives of Grider and Campbell, alleging insolvency as to the personal estate, but praying a discovery, and asking that the lot, No. 45, devised to Sarah and David Campbell, and the house and lot, No. 132, which fell, in the devise of the residue, to Mary Jane and Margaret, to be occupied by the widow, might be subjected to sale for the payment of his demand.
Process was sued out on the 10th day of March, 1832, and executed on Eli Barkley, on the 20th of November, 1832, and on Sarah, Mary Jane, Margaret, Jane and David Campbell, on the 13th of November, 1832. But though *189 issued against Sarah Campbell, widow of David Campbell, deceased, the return does not show that it was executed on her.
When a party dies pending a suit, the death should be suggested on the record, and the suit should be abated as to that party, & revived against the proper representatives, unless the interest of the deceased parties entirely to other def'ts; and in that case, the facts should appear on the record.
At the March term, 1833, Samuel Campbell was appointed guardian ad litem, to defend for Mary Jane, Margaret and David Campbell; but no guardian seems to have been appointed for Sarah, who was also alleged to be an infant.
At the June term, 1833, Samuel Campbell, the guardian of three of the infants, answered for two of them only, to wit. David and Margaret.
It is stated in the amended answer of Eli Barkley, filed at the June term aforesaid, that Mary Jane and Sarah Campbell, two of the infant devisees had died ; but when they died does not appear ; nor is there any abatement entered, or other order made, indicating the action of the Court on the subject.
The court upon this state of preparation, among other things, decreed that the lots be sold to satisfy Payne’s demand; and the defendants have brought the case to this Court for revision.
There is an irregularity in the steps taken, that cannot be sanctioned. It may be that Sarah, the infant, was dead before the process was executed, and that Sarah, upon whom it was executed, is Sarah the widow. But this does not appear by the return; nor can it be presumed from the language of the return, or any reasonable construction of it. She is a necessary party, being interested in one of the lots, and should have been brought before the Court, by a return indicating in unequivocal terms, that process was served on her.
Nor was it regular to proceed to a hearing without some order of record showing the death of the two infants if they were dead. Indeed, the regular course would have been, to abate the suit as to them, upon the proof of the fact of their death; and, as no answer had been put in for them, to have revived it, by bill of revivor, against their representatives. It may be the case, that they have no other heirs or representatives, but their mother and surviving brother and sister. But this does not appear from the record.
A sale of property while it is involved in a suit, is invalid so far as the parties to the suit are concerned, and does not change the attitude of the property, or the rights of the parties.
A trustee or fiduciary, cannot purchase the trust estate or property himself, nor have it purchased by another for his use.—The sale, when the property is purchased by him or for him, is void.
Where a testator directs that his property shall be sold for the purpose of paying his debts, it becomes equitable assets and the executor being a creditor, is placed upon the same with other creditors: he has no right of retainer. And, if this provision in the will, for the payment of debts, is general—no preference or priority being given to any of the creditors, and the assets are insufficient for all, there must be a pro rata distribution, without regard to the dignity of the claims. And—
All the creditors must be parties to a bill filed by any of them, to subject any of the estate to the payment of his debt.
For these irregularities, the decree must be reversed, and cause remanded, for further proceedings. And as it is obvious that but little change can be made in the record, it will not be amiss to offer some suggestions on the merits.
It seems that Barkley, the executor, held a note on Samuel Campbell, at his death, for seventy dollars, which fell due the 25th of December, 1819; and personal estate of the decedent sufficient to pay the same, not having big come to his hands, he, after the service of Payne’s process upon him, under the power vested in him by the will, sold the two lots at public auction, and had them purchased in for his own use, and credited the amount of the proceeds on the note held by him; and he now contends that the sale was valid, and the proceeds properly applied, as he had a right to retain as executor.
The sale made by him, was clearly invalid, upon two grounds:—First—it was made pendente lite, and after the jurisdiction of the Chancellor had attached; consequently, no sale or other act of the executor, afterwards, could change the attitude of the property, or the rights of the parties.
Second—the law will not permit a trustee or fiduciary, to purchase at his own sale, by himself or by another for use. The temptation to unfaithfulness, in the discharge of a fiducial trust, would be too strong to receive the sanction of the law.
The sale made by Barkley, was therefore void, and confered no title upon him, nor upon the friend who purchased at his instance, for his use.
Nor has Barkley a right to retain the proceeds of the lots when sold, in preference to Payne. The power to sell the lots in question, is given by the first clause of the will, by which the sale is directed to be made for the payment of his debts generally. The fund is a trust fund for the purposes specified, and the proceeds are equitable assets, distributable pari passu, among all the creditors; as was determined by this Court, in the case of Cloudas’ *191 Executrix vs Adams, 4 Dana, 603; Helm &c. vs Darby’s Administrator, 3 Dana, 186.
It seem to be a general rule, that where a surety pays the debt, he succeeds to all the rights of the creditor, and acquires a demand against the principal debtor or his estate, of as high dignity as that which the surety has satisfied. And under this rule, a surety who has paid off the principal’s note to the Bank of the Commonwealth, may have the same right, after the principals death, to be first paid, that the Bank had. But this is not here decided, for—
The provision in the act incorporating the Bank of the Commonwealth, requiring executors and administrators to pay the notes it has discounted, in preference to any other debts, applies to legal assets only, and not to the note of a testator, who, having devised his estate to be sold for the payment of his debts, has made it equitable assets. Nor does it restrain testators-from setting apart their real estate, as a trust fund for the payment of specified debts, or their debts generally.
The doctrine of retainer, applicable to legal assets, does not apply. As the fund is a trust fund, and is vested in the hands of the executor, to sell for the payment of debts generally, without any expressed preference, or other direction that Barkley’s, or any other designated debt, shall be first paid—the proceeds of the fund can no more be retained by Barkley, in payment of his own debt, or be applied by him, after the Chancellor’s jurisdiction has attached, to the payment of any designated debt, in preference to any other, than the proceeds of a mortgage estate or an estate deeded in trust for the payment of debts generally, or of certain specified debts, and among them a debt of the trustee, can be retained by the trustee, exclusively, in discharge of his own debt, or applied to the payment of a debt of a favorite creditor.
In equitable contemplation, all debts are equal, whether secured by bond, judgment or simple contract; and in the distribution of equitable assets, will be equally respected, and ratably paid. And as all the creditors are interested in the fund, it is proper that they all should be brought before the Court; whether they are, or are not, does not appear in the case under consideration, from any allegation in the bill, or admission in the answer, or proof in the cause.
Indeed, instead of Barkley having a right to retain, in view of the last clause of the thirty first section of the act chartering the Bank of the Commonwealth, we had some doubt whether Payne had not a preference over Barkley, or a right to be first paid. That clause provides—“and all such notes of hand (speaking of the notes payable to the Bank,) shall be debts of superior dignity, and shall be paid first by executors and administrators.” If this clause applied to, and was intended to control equitable assets, as *192 well as legal, it might well be doubted whether Payne-who as surety of Grider and Campbell, had paid their debt to the Bank—would not have a right to be substituted in the place of the Bank, and have a right to their preference over other creditors in the application of the fund. It is well settled, that a surety who pays the debt of his principal, will, in equity be substituted in the place of the creditor, to all liens held by him to secure the payment of his debt. And it was intimated by the vice chancellor, in the case of Robinson vs Ann Wilson et al., 2 Maddock’s Chy. Rep. 570, on the authority of the case of Hotham vs Stone, and Gaynor vs Royner, decided by Sir Thomas Sewell, that when the surety pays off the bond of his principal, he is, in equity, a specialty creditor on the principal’s estate, and may demand payment accordingly. And so upon the same principle, if he has paid the debt of the principal to the Bank, he might, perhaps, ask to be substituted, in the place of the Bank, to the preference which she possessed over other creditors.
But it is not necessary to decide as to the right of substitution in this case, as we do not think that the statute applies to equitable assets. It is evident, that the legislature had in view the superior dignity, which judgments and bond debts possessed over simple contract debts, in the administration of legal assets, and intended to abolish their superiority or preference over bank debts, or rather to raise bank debts to a superior dignity and preference over them. Hence it is addressed to executors and administrators only, and they are required to pay the bank debts first. Out of what? Clearly out of that fund which the law placed in their hands for administration, as executors or administrators, acting in that capacity only, not as special trustees created by the will, but as legal fiduciaries, acting in the discharge of the general duties confided to them by law, and as such, having only the management of legal assets, in the administration of which they were bound to regard the superiority of debts. The language of the statute is fully satisfied by so applying it, and in our judgment, the intention of the legislature fully carried into effect. The language used will not justify the conclusion, that the legislature intended to create a pre *193 ference in favor of the Bank, to be first paid out of the real estate. If that had been the object, a lien would have been reserved upon the estate of the decedent, or a language used more appropriate and expressive of their intention than that which was used; and if addressed to any representative of the decedent, it would have been addressed to his heirs and devisees, on whom the real estate generally devolves: Nor do we think that the Legislature intended to restrict testators from setting apart their real estate, or any part of it, as a trust fund for the payment of specified debts, or their debts generally, or to retain to the bank any priority or preference of payment out of such a fund.
This being the case, though Payne might claim to be substituted to the rights of the Bank, as the Bank had no preference in the distribution of such a fund, neither can Payne have any.
The decree of the Circuit Court is reversed, and cause remanded, for further proceedings; and the plaintiffs in error are entitled to their cost in this court: