Chancery.

## Bull's Executors *vs* Bull's Creditors.

Case 78.

### Appeal from the Shelby Circuit.

*Wills.    Distribution of assets amongst creditors.    Mar-shaling estates.*

December 15.

Chief Justice Marshall delivered this opinion on the 15th December, 1847, but it was suspended until 29th June, 1848.

Case stated.

In the proceedings upon a bill filed by Bull's executors under the act of 1839, "to regulate the administration and settlement of estates," (3 *Stat. Law*, 240,) the question having been presented whether the will of the testator directing certain of his debts to be first paid, can under the statute, be effectual to secure to those debts more than a *pro rata* payment, the decree deciding this question alone, has by consent, been brought before this Court for revision.

The provisions of Bull's will.

The will of the testator made in 1841, devises his whole estate to his wife, directs his executors to pay a certain debt out of the first money arising either from the collection of debts or the sale of property, authorizes them to sell and convey any of his property, real or personal, at their discretion, for the payment of his debts, and then authorizes them to pay certain debts other than that first referred to, as early as practicable. The wife and four others are appointed executors.

It is contended that the act of 1839, in enacting that in the administration of estates, all debts shall be of equal dignity and shall be paid as thereinafter declared, ratably in proportion to their amounts, and in providing for such ratable payment not only out of the personal estate, but in case of its deficiency, out of the real estate also, was intended to regulate the order of payment so far only as that was a mere question of dignity between different debts—that it was not intended to affect the

BULL'S EX'RS.

*vs*

BULL'S CREDI-
TORS.

rights of testators as previously existing, and that it does not apply where the testator himself has devised his whole estate for the payment of debts; that by such a devise before the act of 1839, the entire estate, (as assets for payment of debts,) was placed under the jurisdiction of the Chancellor, who would have marshaled the assets and have placed all debts on an equality, and that as the debtor could have thus changed, by his will, the rights of his creditors as dependent upon the law, depriving the specialty creditors not only of their priority in the administration of the personalty, but of their exclusive claim according to the common law, against the land, it is but the exercise of the same or a similar right since the act of 1839, for him to make a will giving priority to one, when the law places all on an equality.

But it is to be recollected that the Court of equity took, and indeed sought jurisdiction of the assets in such cases, in order to give effect to its favorite principle of equality. The question as to the power or right of the testator, was whether he could devise his estate for the payment of debts. This being allowed or not prohibited by law, the Court of equity took hold of the estate as a trust, and administered it for the payment of debts according to its own principles and the presumed intention of the testator, though in violation of the legal rule of administration. The effect then was, that the debtor might, by his will, withdraw his estate from the legal rule of administration and subject it to the equitable rule. But this power had its real efficacy and existence in the power and disposition of the Court of equity to enforce its own principles. It rests upon the justice and equity of appropriating the whole of the debtor's property to the payment of all of his debts fully, if the property be sufficient, and ratably if there be a deficiency; and it by no means follows that because an indebted testator might, by his will, remove his estate from the operation of the legal rule and place it under the equitable rule, he might withdraw it from the operation of both, and make a disposition of it which violated both law and equity. No doubt the

*Before the statute of 1839 for the equal distribution of estates amongst creditors, where estates were devised for the payment of debts, the Court of equity took hold of the estate as a trust and administered it according to its own principles and the presumed intention of the testator.*

Bull's ex'rs.
  *vs*
Bull's Credi-
  tors.

—But Courts of
equity have nev-
er sanctioned a
disposition    by
will, of the whole
of a  testator's
estate to ·one or
more  creditors,
to the prejudice
of others.

In England a
creditor by spe-
cialty,   binding
the heir, had re-
medy against the
personal as well
as  real  estate,
not  so  as  to
simple contract
debts,  for then
the   personalty
only was bound.

Since the statute
of 1839, a testa-
tor may  not, by
his will,  prefer
one creditor  or
class of  credi-
tors to another,
if his estate, real
and personal, be
insufficient   to
pay  all.   The
Chancellor get-
ting  possession
of the  adminis
tration  by  bill
filed under  that
statute, will dis-
tribute it accord-
ing to its provi-
sions,  the  will

Chancellor would have always respected the intention of a testator, who having ample means, gives to his creditors an efficient remedy upon his real estate, in order to make effectual his bequests of the personalty. The Chancellor might also, perhaps, give effect to a will which providing specially for one or more creditors, left ample means for the satisfaction of those who were not specially provided for. But no case has been shown in which a Court of equity has given its sanction to a will which appropriating the whole estate to one or more creditors, deprives the others of the remedy which they would otherwise have, for obtaining payment.

By the law of England, a creditor by specialty binding the heir, had his remedy not only against the personalty, but also upon the land of his deceased debtor, in the hands of his heir or devisee, while the creditors by simple contract had their remedy against the personalty alone. Suppose a debtor having no personal estate, had devised his land in trust for the payment of his simple contracts alone, or for the payment of those debts first, and then of the others, and the land was in fact insufficient to pay all the debts, or sufficient to pay the simple contracts alone, would the Chancellor have carried out such a will according to its terms? Or would he not, if the question were brought into his Court, administer the estate according to the principles of equity, by regarding the will as effectual so far only as to give the simple contract creditors a remedy against the land, and thus place them on an equality with the creditors by specialty? If it be said that such a devise has the sanction of that section of the act against fraudulent devises, which declares that devises for the payment of any just debts shall be in full force, (1 *Stat. Law*, 742-3,) and if on this ground a Court of equity could not apply its own principles to the case which has just been supposed, then the question would arise, whether the provision of the act referred to, as giving force to such a devise, in a case where the testator's estate is insufficient to pay all his debts, is repealed by the act of 1839; and as the manifest and declared object of that act is to effectuate the

principle of equality, and a ratable payment of the debts of a testator or intestate debtor, by the appropriation, not only of the personalty, but also of his real estate, which object would be obviously defeated by giving effect to a will which paid some debts in full, and left others wholly or in part unsatisfied, we think it must be regarded as repealing any previous law, if there be such, by which such a disposition was made effectual. It does not, it is true, profess to regulate testamentary rights, but it regulates the rights of creditors, and disposes of the deceased debtors estate in subservience to those rights as established by its own provisions, and it necessarily cuts off any right of the debtor to defeat, by his will, the rights established by the statute or the provisions which it has made for their security. It gives the force of legislative authority to the equitable principles on which a Court of equity had previously administered the assets brought within its jurisdiction. It places the whole estate, whether there be a will or not, within the jurisdiction of a Court of equity as assets for the payment of debts, and requires that it be administered so as to effectuate equality and ratable payments. The subjection of the estate to these principles is no longer left to the will of the debtor and to the general powers and doctrines of the Court which might be controlled by a statute inconsistent with them, but is established by the authority of the statute, which must have its operation notwithstanding any previous statute, and which, by its own force necessarily supersedes all previous statutes and laws, so far as it is inconsistent with them. This statute operates upon the whole estate subject only to such valid incumbrances and preferences as the debtor may have created before his death. It takes hold of the estate immediately upon his death, so far as it is necessary for securing equality and ratable payments of debts, and displaces, so far as is essential to its own operation, every testamentary disposition of the debtor. The statute must, necessarily, be paramount to the will of the testator, which has effect only by authority of law. So far as they are inconsistent, therefore, the statute must prevail. And the devise by

BULL'S EX'RS.
*vs*
BULL'S CREDI-TORS.

notwithstanding, subject however, to other incumbrances created before the death of the testator.

which certain creditors are preferred, being, in case the whole estate is insufficient to pay all the debts, directly subversive of the intention and declared objects of the statute, such a devise must be deemed wholly ineffectual.

Wherefore, the decree is affirmed.

*McHenry* for appellants.