JUDGE COFER
delivered the opinion of the court.
But two questions are presented for decision on this appeal:
1. Are liabilities of a decedent as executor, administrator, guardian, and committee of an idiot or lunatic to be paid out of the proceeds of real estate, sold under order of the chancellor in a suit brought by the personal representative for a settlement of the estate, in preference to other liabilities of the decedent, or are such proceeds to be distributed in such manner as to produce, as nearly as possible, equality among all the creditors of such decedent?
*129 2. If such preference exists as to the proceeds of the realty, have those who were sureties for the decedent upon his bond as executor, administrator, guardian, or committee, and who, after his death, have been compelled to discharge his liability thereon, a right to be substituted to the preference to which those to whom they have made payment were entitled?
1. Section 33, article 2, chapter 39, General Statutes, which, so far as it affects this case, is the same as section 33, article 2, chapter 37, Revised Statutes, in force when the rights involved in this decision accrued, provides that if the personal estate of a decedent be not sufficient to pay his liabilities, then the burial expenses of such decedent, and the cost and charges of the administration of his estate, and the amount of the estate of a dead person, or of a ward, or of a person of unsound mind, committed by a court of record to and remaining in the hands of a decedent, shall be paid in full before any pro rata distribution shall be made, and that all other debts and liabilities shall be of equal dignity, and paid ratably in the administration of his estate.
This section speaks only of personal estate, and can not, by its own force, extend to and include the proceeds of real estate sold by order of the chancellor for the payment of debts which can never lawfully come to the hands of a personal representative by virtue of his office for the purposes of administration. And there is no statute now in force in this state which in terms regulates the administration of the proceeds of the real estate of a decedent. "We must therefore determine the question under consideration by the rules ■of equity.
Equality is equity, and the chancellor who regards all ■debts as in conscience equal, and therefore equally entitled to be paid, will, in the administration of equitable assets, so distribute them as to produce as nearly as possible equality among .all the creditors. (Story’s Equity, sec. 553.) But in the ad *130 ministration, of legal assets, courts of equity follow the rules of law, and give the same priority to the different classes of creditors which is enjoined by the law. (Ibid. 553.)
If the proceeds of real estate sold in an administration suit are to be regai’ded as equitable assets, then the chancellor, following his own favorite maxim, “equality is equity,” will, in a case like this, distribute the personal assets under the statute supra, in the payment of the liabilities of the decedent as executor, administrator, guardian, or committee, and then out of the proceeds of the realty, make all other creditors equal to those preferred in the distribution of the personal estate; and having thus made all equal, will distribute the residue pari passu among all classes of creditors. But if the proceeds of realty are legal assets, then the chancellor must follow another of his maxims, “ equity follows the law,” and give the same priority in the administration of the proceeds of the realty which the law gives in the administration of personal assets.
The question to be decided, then, is whether the proceeds of land sold under a judgment rendered in a suit for the settlement of an estate are legal or equitable assets.
Counsel for the appellants insists that such proceeds are equitable assets, and cites Story’s Equity, section 551; Williams on Executors, 1198; and Grider v. Payne, 9 Dana, 188, in support of that view, while appellees’ counsel insist that since land has been declared by statute to be subject to the payment of debts of all grades, it is legal assets.
The case of Grider v. Payne was unlike this, and was not decided on the ground that the proceeds of land sold under the statute were equitable assets. The facts were these: Payne was the surety of Grider & Campbell in a replevinbond to the Bank of the Commonwealth. Grider and Campbell both died and Payne paid the debt. Campbell left a will in which he charged his real estate with the payment of his debts, and his estate proving insufficient for that purpose, *131 Payne claimed to be substituted to the rights of the bank, and in that way asserted priority over the other creditors to the extent of the debt he had been compelled to pay to the bank as the surety of Grider & Campbell. That claim was based on a clause in the charter of the bank which provided that, in the administration of estates, debts due to the bank should be of superior dignity, and be first paid by executors and administrators.
The court held that the power given in the will, to sell the testator’s real estate for the payment of his debts generally, raised a trust for the purpose specified, and that the proceeds of the realty were therefore equitable assets and distributable pari passu among all the creditors, and that as the language of the charter only embraced executors and administrators in the direction to prefer the bank to other creditors, it only gave the bank priority of payment out of the legal assets.
The decision was not based on the ground that the proceeds of the land were equitable assets because they arose from the realty, but because the will, having directed the land to be sold to pay debts, charged it with a trust, and because of the trust the assets were equitable. This was in accordance with a long line of precedents holding that the proceeds of land charged by the decedent with the payment of debts were equitable assets. (1 Story, section 552; Bispham’s Equity, section 532.)
It is true that legal assets are in a certain sense a trust fund, and that they are so is the foundation of the jurisdiction of courts of equity to compel their application to the purposes of the trust, that is, to the payment of debts, and the surplus, according to the directions of the will, if there be one, and if not, then according to the statute of distributions. Such a trust is created by the law, and must be executed as the law directs, and as the law has prescribed the order in which debts are to be paid, the chancellor will follow *132 that order just as he will iu other cases follow the directions of the maker of the trust in its execution.
But when a decedent has devised his real estate to be sold to pay his debts, or has charged his debts upon his real estate, he is the maker of the trust, and unless there be some rule of law to control his action, the chancellor will execute the trust according to the directions contained in the will; and in the absence of any directions in the will or rule of law to the contrary, he will distribute according to the equitable maxim, and pay the debts ratably. Since our statute has made land subject to all the debts of the decedent, it has been held that a debtor could not, by charging his debts upon his real estate by will, give creditors a preference to which they would not otherwise have been entitled, and in so holding the court gave an intimation at least that land is to be regarded now as legal assets. (Bull v. Bull, 8 B. Mon. 332.)
Judge Story says that legal assets are such as come into the hands and power of the personal representative, or such as he is entitled to, virtute officii, to dispose of in the course of administration. In other words, whatever an executor or administrator takes qua executor or administrator, or in respect of his office, is to be considered legal assets. But he does not say that nothing else is to be regarded as legal assets; but on the contrary says expressly that when real estate is by statute made liable for the payment of debts, then it constitutes legal assets (Story’s Equity, sec. 552, a); and that view is sustained by the opinion of the Court of Appeals of Virginia in McCandlish v. Keen, 13 Grattan, 633, and also by Goodchild v. Ferrett, 5 Beavan, 398, and Charlton v. Wright, 12 Simons, 274; and in Lovegrove v. Cooper, 2 Smale & Giffard, 271, it was distinctly decided that the proceeds of land made subject by statute to the payment of debts, and which had been sold under a decree in a creditor’s suit to settle the estate, were legal assets.
*133 These authorities, we think, warrant the conclusion that for the purpose of ascertaining the right of priority as between creditors of a decedent, the proceeds of his real estate must be regarded as legal assets, and it follows from that conclusion that debts owing by a decedent as executor, administrator, guardian, or committee, on account of estate committed to his hands by a court of record, are entitled to priority of payment out of the proceeds of real estate as well as out of the personal assets.
2. The second question seems to be settled by the opinion of this court in the case of Schoolfield v. Rudd, 9 B. Mon. 291. It was there held that when preference is given to a debt on account of its character, it does not lose its character when paid by a surety, but retains in his hands the same equitable claim to priority which it had before it was paid, and it was accordingly held that the surety of an administrator, who, after the death of his principal, had been compelled to pay money due from his principal as administrator, had the same right to priority that the persons had to whom he made payment.
The judgment of the court below conforms to these views, and must therefore be affirmed.
Chief Justice Lindsay dissenting.