## Harding v. Harding, et al.

(Decided January 8, 1913.)

### Appeal from Boyle Circuit Court.

1. Appeal—Dismissal of Because Order Not Final—When Subsequent Appeal Not Barred.—An appeal from a previous order dismissed because the order was not final, does not bar a subsequent appeal from the judgment afterwards entered, although the judgment was entered before the first appeal was prosecuted.

2. Executors and Administrators—Wills—Sale of Land.—Where an executor is authorized by the will to sell and convey land at his discretion he did not abuse his discretion in selling enough land to pay the claims asserted against the estate although a part of the claims was afterwards disallowed, and one who asserted a claim sufficient to cover the excess for which the land was sold cannot complain of the acts of the executor.

3. Executors and Administrators—Decedent's Personal Estate Vests in Personal Representative.—The personal estate of the decedent vests in the personal representative, and the devisee takes nothing in the fund or in the interest accruing on it, until the debts are paid.

4. Executors and Administrators—Sale of Land for Payment of Debts—Proceeds of Sale.—The proceeds of land sold by the executor under a power conferred by the will for the payment of debts are assets in his hands, and the devisee takes an interest in the fund and interest thereon, subject to the payment of the

debts. The interest follows the principal, and is held by the executor just as the principal.

5. Appeal—What Will Not Be Considered On Appeal.—A matter not presented to the circuit court before judgment will not be considered on appeal.

CHARLES C. FOX and HAZELRIGG & HAZELRIGG. for appellant.

ROBT. HARDING for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Affirming.

Samuel Harding died in January, 1903. His will, which was duly admitted to probate, is in these words:

"I, Samuel Harding, do make this, my last will and testament, written wholly by my own hand, revoking all other wills made by me.

"Item first. I have in my hands belonging to my wife thirteen thousand dollars in notes and contracts showing indebtedness to me or her from others, whether in my own name or hers this is nevertheless the property of my wife to the extent of thirteen thousand dollars, exclusive of some notes she holds in her possession, and I recognize this indebtedness to her with interest from this date, and it is my will that my estate guarantee and pay the whole sum as though it was a debt due from me to her as indeed it is.

"Item two. I give to my beloved wife, Lucy W. Harding, one-third of all the remainder of my estate after my debts (including the above to her) are paid absolutely and unconditionally, and I give the remaining two-thirds to her for and during her natural lifetime, the remainder interest to go as though I had died intestate to my brothers and sisters or their descendants should I survive them.

"Item three. I appoint my wife, Lucy W. Harding, executrix of this, my will, and invest her with full power to sell and convey any and all of my real and personal estate as she may think best.

"In testimony of all of which, witness my signature this 27th day of November, 1894.

"Samuel Harding."

The wife declined to qualify as executrix and J. L. Bruce was appointed administrator with the will annexed. He sold a part of the land and the wife insisted that he had no power to sell it. Her contention was sustained by the Circuit Court, but on appeal to this

Court, the judgment was reversed, it being held by this Court that the administrator, with the will annexed, had all the powers conferred upon the executrix by the will. (Harding's Admr. v. Weisiger, 33 R. 170.) The wife presented a claim against the estate amounting to about $42,000; other claims for large amounts were also presented. The Circuit Court fixed the amount of the wife's debt at $29,498.78, subject to certain credits. On appeal to this Court it was held that the amount due her on September 27, 1906, was $20,541.21. (Harding's Admr. v. Harding, 132 Ky. 133). After a judgment had been entered by the Circuit Court in conformity to the mandate of this Court and the administrator had paid off the claims which had thus been liquidated, a considerable part of the estate was left in his hands, and on May 1, 1909, an order was entered directing him to turn over everything in his hands to the widow, Lucy W. Harding, one-third of the property to be hers absolutely and two-thirds to be held by her for life; and she was required to execute a bond with good surety payable to the remainderman that she would account for the two-thirds at her death. She objected to this order and refused to execute the bond. On April 30, 1910, a judgment was entered directing the administrator (1) to collect as speedily as possible by suit or sale all matured obligations held by him. (2) To report at the next term what claims he held were doubtful or of no value, and either party was allowed to take proof on this matter. (3) The administrator was directed to deliver at once to Lucy W. Harding all assets in his hands ready for distribution and not coming within the purview of 1 and 2. If she failed to execute a bond, then he was required to turn over the assets to the Commissioner of the Court. She declined to execute the bond and he turned over the estate to the Court's Commissioner. On January 16, 1911, she was permitted by the Circuit Court to file an amended answer in which she set up a claim against the administrator amounting to something over $15,000. On May 3, 1911, the Circuit Court heard the case on this claim and entered a judgment in her favor for $5,689. From this judgment an appeal was prosecuted to this Court, where it was held that the order of May 1, 1909, was merely interlocutory, but that the judgment of April 30, 1910, was final, and that the subsequent judgment of May 3, 1911, was erroneous because the Court had disposed of the controversy

by the judgment of April 30, 1910, and that after that final judgment had been entered, it was too late for amended pleadings to be filed and additional claims to be set up. The appeals then before the Court were prosecuted from the judgment of May 5, 1911, and of May 1, 1909. No appeal was then prosecuted from the judgment of April 30, 1910. (Harding v. Harding, 145 Ky., 315.) The appeal now before us is prosecuted by Lucy W. Harding from the judgment of April 30, 1910. She insists that judgment is erroneous in that it denied her the rents and profits of the estate to which she was entitled as devisee, and that these should have been adjudged to her before the division of the estate in thirds, as provided by the will. It appears that there was then in the hands of the Court about $17,000 in cash, and bank stock worth about $1,800. She insists that she was entitled to the rents of the real estate and that, as more of the estate was sold than was necessary for the payment of the debts after exhausting the personal estate, she should be made up out of the funds in the hands of the Court what she lost in the way of rents by the sale of the real estate; and that she is also entitled to the interest earned by the entire fund while in the hands of the administrator.

Appellee has entered a motion to dismiss the appeal on the ground that all the matters complained of are *res adjudicata;* but this motion is based upon a misunderstanding of the decision in Harding v. Harding, 145 Ky., 315. In that opinion it is expressly shown that the only thing before the Court then was the correctness of the judgment of May 5, 1911, and that no appeal was then prosecuted from the judgment of April 30, 1910. As the correctness of that judgment was not before the Court on that appeal, the judgment there is not conclusive as to it, and the motion to dismiss the appeal now before us is not well taken.

It remains, therefore, to dispose of the appeal on the merits. By the will of Samuel Harding he directed the payment of a certain debt to his wife, and devised to her absolutely one-third of all the remainder of the estate after his debts were paid; the other two-thirds to go to her for life, and at her death to his heirs-at-law. He gave the administrator full power to sell and convey all of the real and personal property as the administrator might deem best. The administrator sold all of the real estate; but in view of the condition of the

estate we do not see that in doing this he abused the discretion conferred upon him by the will. The debts against the estate as allowed by the Court amounted to $87,723.12, including cost of administration, and, as presented to the commissioner, amounted to a much larger sum. If Lucy W. Harding's claim had been allowed in full, there would have been no surplus in the hands of the administrator. It was the duty of the administrator to use reasonable judgment in arranging for the payment of the debts of the estate, and certainly Lucy W. Harding cannot complain when, if her debt had been allowed as claimed by her, no more land would have been sold than would have been necessary to pay the debts.

Upon the death of the decedent the title to all his personal property vested in his personal representative. Lucy W. Harding as a devisee under the will took only the remainder left after the payment of the debts, one-third going to her absolutely and two-thirds for life. She took no title to the personal estate. This vested in the personal representative and she was only entitled to the surplus left after the payment of the debts and the cost of administration. The interest on the fund or the increase is a part of the fund, and she was no more entitled to the interest than to the principal. (Cook v. Burton, 5 Bush, 67; Muldoon v. Crawford, 14 Bush, 132; 2 Woerner on Administration, Sec. 307; 18 Cyc. 172-174.)

The testator, by his will, authorized the executor of the will to sell the real estate, and in view of the condition of the estate this was manifestly necessary. The rule is that where the land of the decedent has been sold to pay debts under a power in the will the proceeds are assets in the hands of the executor, and are a trust fund held by him for the payment of debts. (Grider v. Payne, 9 Dana, 191; Muldoon v. Crawford, 14 Bush, 132; Maret v. Robb, 91 Ky., 90; 11 Am. and Eng. Encyc. of Law, 84; 18 Cyc., 189). The proceeds of the sale of the real estate being assets in the hands of the personal representative for the payment of debts, the interest follows the principal, and is also assets in his hands. The widow was only entitled to have absolutely one-third of the surplus remaining after the payment of the debts and two-thirds of it for life.

This disposes of all the matters complained of on the appeal except the rent of the real estate. It appears from the record that she collected in round num-

bers about $2,500 of the rents and used the money. It also appears that the personal representative collected $307 of the rents; but this he did in the earlier part of the administration. He reported the fact to the Court, his reports were confirmed, no claim being set up by the widow to the $307 of the rent money by any exception to the reports; and after all this was done, he was ordered to pay out the money on the debts and did pay it out. When the case was heard on April 30, 1910, she, in no way, brought the matter to the attention of the Court, and the claim which is now made seems first to have occurred to counsel since that judgment was entered.

Lucy W. Harding objected to the order of May 1, 1909, and moved the Court to set it aside. The ground of this objection appears to have been that by that order the administrator was directed to turn over to her all the notes and claims due the estate, when she insisted that the administrator should collect the assets and make a final settlement before he was discharged. On the hearing of this motion the judgment of April 30, 1910, was rendered and the administrator was directed to collect the assets, and to report to the Court what were good and what were bad, so that there would be no dispute in the future as to the character of the assets turned over to her. It was incumbent upon her when she was insisting upon the correction of the order of May 1, 1909, to present to the Court all her grounds of complaint. She could not present some objections to the order and hold back others for future use, and she cannot complain of the judgment of the Circuit Court on account of objections which were not then presented to the Circuit Court. It is a familiar rule that this Court will not notice objections made for the first time on appeal. The reason of the rule is obvious. The opposite course involves delay and imposes costs that would otherwise be avoided. We therefore conclude that as this sum of $307 of rents which was collected by the administrator and reported by him to the court, was paid out by him under the order of the Court on the debts and approved by the Court without objection by her, and a final judgment was thereafter rendered disposing of the entire estate without the matter being called to the attention of the Circuit Court by exception, of any sort, the objection cannot for the first time be made in this Court by appeal.

This conclusion makes it unnecessary for us to consider the other questions raised on the appeal; but we deem it proper to add that on the whole record, and in view of all the facts, we do not perceive that any substantial injustice has been done to her by the judgment.

Judgment affirmed.