CARRIE G. COX AND ATTILLA COX, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 69698.   Promulgated November 30, 1934.

*E. J. Wells, Esq.,* for the petitioners.
*Hartford Allen, Esq.,* for the respondent.

### OPINION.

GOODRICH: Petitioners, who are husband and wife and filed a joint return, assail respondent's determination of a deficiency in income tax of $16,614.70, for the year 1930.  Since the items here in dispute apparently relate only to the income of Carrie G. Cox, hereinafter we will speak of her as the petitioner, without further reference to Attilla Cox.

The controversy concerns two problems: First, what is the proper basis for computation of gain or loss upon sales of stocks made by petitioner in 1930? and, second, should there be included in petitioner's income for 1930, the income received by an estate of which petitioner was the residuary legatee?

There is no dispute as to the facts.  The parties, by counsel, submitted a stipulation, augumented by a deposition and some documentary evidence.  The facts material to an understanding of the issues we summarize:

Petitioner, a resident of Louisville, Kentucky, is a daughter of Hattie R. Gaulbert who died, a resident of Louisville, on December 30, 1929, leaving a will which named petitioner residuary legatee. The Gaulbert estate was valued at $1,615,976.59.  Specific bequests totaled $137,500; debts of the decedent, $826.56.  All of these items were paid in full on or before April 4, 1930.  The only claims against the estate remaining unpaid after that date were the several

tax liabilities—income tax of the decedent, the Federal estate tax, the estate inheritance tax and local property taxes—which totaled $120,702.97 and were not then due and payable.

For quite a time prior to decedent's death, the Fidelity & Columbia Trust Co. had acted as her agent in the management of her properties. Thereafter it qualified and acted as executor under her will. Upon the death of her mother, petitioner appointed the trust company as her own agent, and instructed it to take possession of her inheritance and continue to manage it for her in the same manner as the company had acted for her mother. The trust company accepted the appointment and has since acted in that capacity. Both for the Gaulbert estate and for petitioner it carried on its books three accounts, designated respectively "income", "investment", and "principal."

Included in the residuary estate going to petitioner were 227 shares of the stock of Louisville & Nashville Railway Co. (hereinafter called L. & N.) and 3,380 shares of stock of the Banco Kentucky Corporation. On April 4, 1930, the former had a market value of $138 a share, and the latter a market value of $24 a share. Both stocks were issued in the name of the trust company and were in its custody.

On October 16, 1930, the trust company, by appropriate entries on its records, transferred 200 shares of the L. & N. stock to the account of petitioner. On October 29, 1930, petitioner (acting through her agent, the trust company) sold these shares for $21,942. On November 4, 1930, a certificate for 27 shares of L. & N. stock was forwarded to that company for reissue in the petitioner's name, and on December 10, 1930, she sold these shares for $2,612.52. The market value of the L. & N. stock was $110 a share on October 6, 1930.

On November 19, 1930, the certificate representing the Banco Kentucky stock was forwarded to that company for reissue in petitioner's name. On the same day she sold 530 shares of it for $449.19, and on November 21, 1930, she sold the remaining 2,850 shares for $1,333.80. The market value of the Banco Kentucky stock on October 6, 1930, was $15.375 a share. The company was taken over by a receiver on November 24, 1930.

Upon the death of Hattie Gaulbert, or immediately thereafter, the trust company, as executor, received in cash, as a part of her estate, $52,833. During 1930, it received as income of the estate, including dividends of $676 upon Banco Kentucky stock paid October 2, a total of $52,380.44 (less certain expenses). The cash in its hands during the year, therefore, totaled $105,213.44. The demands upon the estate for which the executor needed cash—the debts, tax liabilities, specific bequests and administration expenses—totaled $182,-758.41 (after partial payment of a specific bequest by the delivery of

securities to the value of $99,825.08). The excess of the cash demands over the cash available was, therefore, $77,544.97, which had to be met through sales of securities. During 1930, the executor sold securities of an aggregate par value in excess of $150,000, crediting the proceeds to the various estate accounts.

Petitioner directed the executor to hold the income of the estate to meet the tax liabilities or other cash demands. However, upon her order the executor paid out during the year items totaling $8,350, which were charged against income account and which apparently discharged certain of petitioner's personal commitments. The demands against the estate were all discharged by the end of the year,[1] and on December 31, 1930, the trust company, by appropriate entries, closed its book accounts for the Gaulbert estate, and transferred to petitioner's account a cash balance of $17,132.51, " in full settlement of all funds in the hands of the executor."

Between October 16 and December 31, 1930, all the other assets in the accounts of the estate had been transferred to petitioner's accounts. No final settlement or accounting was filed by the executor during 1930 in a local court of competent jurisdiction, nor did any such court confirm a settlement or enter a decree of distribution of the estate.

On her return for 1930, petitioner claimed a loss of $65,767.01 upon the sales of the Banco Kentucky stock, which respondent disallowed. She claimed also a loss of $4,676.81 upon the sales of the L. & N. stock, of which respondent allowed $1,318.86. The propriety of respondent's action respecting these losses is the first issue for our decision.

Moreover, respondent has included in petitioner's 1930 income $39,660.24 of the income of the Gaulbert estate in that year, regarding that amount as having been paid or credited to petitioner. The propriety of that action is the second issue in the case.

Whether losses were sustained by petitioner upon the sales of the stocks mentioned depends upon the basis used to determine gain or loss. That basis is prescribed by statute, and section 113 (a) (5), Revenue Act of 1928, is controlling. Under it the basis for determining gain or loss upon these sales is the fair market value of the stock " at the time of distribution to the taxpayer." Consequently, the primary inquiry here is, When were these stocks distributed to petitioner?

---

[1] These taxes were paid during 1930:

| | |
|---|---:|
| Income tax of decedent, 1928 | $199.44 |
| Income tax of decedent, 1929 | 6,567.97 |
| State and county taxes | 2,338.19 |
| State inheritance tax | 92,381.94 |
| Federal estate tax | 19,170.11 |
| Federal stamp tax | 45.34 |
| | 120,702.99 |

Respondent has determined that the L. & N. shares were distributed to petitioner on October 16, and November 4, 1930; that the Banco Kentucky shares were distributed on November 19, 1930. It is his view that the term " distribution " necessarily implies some definite action indicating a severance of the shares from the estate, and their transfer to the legatee's ownership. Such action he finds in the elimination of the shares from the estate's accounts on the executor's books, coupled with the listing of them in petitioner's accounts; and the forwarding of the certificates for reissue. Consequently, he uses as the basis, the fair market values of the shares on those dates, and has determined that petitioner's loss on all the sales was only $1,318.86.

Petitioner contends that the basic date is April 4, 1930, when all the claims against the estate then payable had been discharged, leaving unencumbered assets to a value of $1,570,000. She was the residuary legatee; at that time she acquired substantial ownership of the residuary assets, she argues, and the acquisition of such ownership was equivalent to a distribution to her.

With that, we cannot agree. It is well settled that a residuary legatee acquires substantial ownership of the property bequeathed to him at the time of the testator's death, *Brewster* v. *Gage*, 280 U. S. 327. Were petitioner's argument sound, the value as of the date of decedent's death of the assets of the residuary estate would be the basis for determining gain or loss upon their later disposition. That possibility, the Congress expressly eliminated in the case of residuary estates, by providing in the cited section of the 1928 Act that the basis should be the value at the time of distribution.[2]

" Distribution  *  *  *  does not necessarily mean passing into the uncontrolled possession and disposition of the beneficiary. It means separation or segregation from the trust estate so that it (the bequeathed property) no longer forms any part or parcel thereof." *Willcuts* v. *Ordway*, 19 Fed. (2d) 917. See also *Fidelity & Columbia Trust Co.* v. *Lucas*, 66 Fed. (2d) 116; *Matthiessen* v. *United States*, 65 Ct. Cls. 484 (2 B.T.A. 921).

We agree with respondent that the first acts indicating a separation from the estate of the particular stocks here involved were the entries on October 16, 1930, transferring 200 shares of the L. & N. stock to petitioner's account; followed by the forwarding of the certificates for both stocks on November 4 and November 19, respectively, for reissue in the name of petitioner. Which of these acts effected a separation, we need not decide. Certainly, so far as this record shows, nothing was done prior to those dates toward a segregation of these stocks from the estate either on April 4, 1930, when

---

[2] See S. Rept. No. 960, 70th Cong., 1st sess., p. 26.

the debts and specific bequests were paid, or nine months thereafter when, under the laws of Kentucky (sec. 3860, Carroll's Kentucky Statutes) the estate might have been distributed without peril to the executor. On the contrary, such dividends as were paid on the shares, as late as October 2, 1930, were taken into the income of the estate, evidencing that title, custody and management of the stocks were in the executor. Since, apparently, it is conceded that the value respondent used as the basis for each stock was correct, according to his view as to the basic date, we approve his determination as to the first issue. Cf. *William R. Huntley*, 30 B.T.A. 931; *Ralph W. Harbison*, 26 B.T.A. 896 (reversed on another issue, 68 Fed. (2d) 1004, and certiorari granted); *Lillian McDonald Brinton*, 28 B.T.A. 472.

As to the second issue, we are of opinion that respondent's determination is erroneous, except as to the sum of $8,350. We are convinced that the balance of the $39,660.24 income received by the estate during the year 1930 was neither paid nor credited to petitioner, within the meaning of section 162 (c), Revenue Act of 1928.

Respondent, in support of his determination, cites us cases (which are inapplicable because of divergent facts) where, by direction of will, certain income was paid to named beneficiaries, who were held to be taxable thereon.[3] Here, the will was silent as to the estate's income during administration, and petitioner was to receive the residue of the estate—the amount remaining after payment of all specific bequests, taxes, claims and expenses. The laws of Kentucky (sec. 3854, Carroll's Kentucky Statutes) do not require the executor to pay or credit the estate's income to a residuary legatee, but permit its use for the payment of debts of the decedent; *Harding* v. *Harding*, 151 Ky. 398. Here, the cash demands upon the estate were substantially in excess of the estate's income; a part of the corpus was sold to meet them. We are satisfied that the greater part of the income was applied in satisfaction of those demands, and was not properly paid or credited to petitioner. *United States* v. *Woodward*, 256 U. S. 632. Cf. *Jackson* v. *Price*, 6 Fed. Supp. 182; *Elnora C. Haag*, 19 B. T. A. 982; *Robert B. Honeyman, Jr.*, 24 B. T. A. 126.

The items totaling $8,350, however, were paid out by the executor from income upon petitioner's order, for her own ends. We have no reason to suppose that the payments were not proper, within the meaning of section 162 (c), Revenue Act of 1928. That amount, therefore, should be included in petitioner's income. Cf. *Harold A. Whitlock*, 22 B. T. A. 1355.

*Judgment will be entered under Rule 50.*

---

[3] *Walter S. Gurnee et al., Executors*, 13 B. T. A. 262; *Everett J. Esselstyn, Executor*, 26 B. T. A. 181 (affd., 65 Fed. (2d) 1015); *Little* v. *White*, 47 Fed. (2d) 512.