## APPEAL OF F. W. MATTHIESSEN, JR.

Docket No. 2125.   Submitted July 1, 1925.   Decided October 20, 1925.

1. A residuary legatee under a will acquired personal property within the meaning of section 213(b) (3) of the Revenue Act of 1918, when distributed by the executor or trustee, and not at the death of the testator, for the purpose of computing the gain or loss upon the subsequent sale thereof.

2. Upon the evidence submitted, *held*, that taxpayer acquired the stock, the profit upon the sale of which is here in controversy, on March 13, 1918, under a distribution agreement between the beneficiaries named in the will, who were also the executors and trustees thereunder.

*M. F. Gallagher* and *E. B. Wilkinson, Esqs.*, for the taxpayer.
*Ellis W. Manning, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the calendar year 1918 in the amount of $39,616.82. From stipulations submitted and evidence introduced at the hearing the Board makes the following

### FINDINGS OF FACT.

F. W. Matthiessen, Jr., is an individual residing at Triunfo, Ventura County, Calif. He is one of four residuary legatees under the will of F. W. Matthiessen, of La Salle, Ill., who died February 11, 1918. So much of the will as is pertinent to the issue in this appeal reads as follows:

Clause One: I give, devise and bequeath to my three children, F. W. Matthiessen, Jr., Adele M. Blow, and Eda Matthiessen, as Trustees, all the estate, both real and personal, of every kind and description, of which I may die seized, upon the following trusts:

\*       \*       \*       \*       \*       \*       \*

3. At the end of one year from the probating of this will, said Trustees shall divide into four parts, equal in value, all the balance of the real estate and all of the personal property in their hands, including the net rents or personal property received from my executors as hereinafter provided; and by appropriate deed, deeds, assignments or other means of conveyance, convey one of such four equal parts to my daughter Eda Matthiessen, another one-fourth to my daughter Adele M. Blow, and another one-fourth to my son, F. W. Matthiessen, Jr., and the other one-fourth to the Merchants Loan & Trust Company of Chicago, Illinois, as Trustee for my grandson Philip Matthiessen Chancellor, upon the trusts hereinafter set forth.

\*       \*       \*       \*       \*       \*       \*

Clause Two: I nominate and appoint my said three children, F. W. Matthiessen, Jr., Adele M. Blow and Eda Matthiessen to be the executors of this will, with power only over the personal property of which I may die seized until the same is turned over to them as Trustees as hereinabove provided for.

Said Executors shall have the usual powers of executors; shall pay all my just debts and funeral expenses and fulfill out of the funds in their hands all written obligations into which I may have entered and out of my general estate pay all inheritance and transfer taxes which may be levied in this or any other state. Said Executors shall account to themselves as said Trustees, and may, from time to time, as Executors, turn over to themselves as Trustees, funds in their hands as Executors, not needed for the purposes of their executorship, and within one year after the probating of this will, shall turn over all remaining funds in their hands as Executors to themselves, as Trustees, for the purposes of the division into four equal parts, as hereinabove provided for.

The will was probated in the Probate Court of La Salle County, Ill., on March 21, 1918. Adele M. Blow and Frederick W. Matthiessen, Jr., qualified as executors under the will.

Prior to the probate of the will the executors and trustees named thereunder entered into an agreement on March 13, 1918, whereby the property of the estate was assigned to the beneficiaries named in the will, subject to an agreement providing for the refund, pro rata, to the executors of sufficient funds to cover the liabilities of the estate. Distribution under the agreement was completed January 23, 1919, with the exception of a few shares of stock of little value. The agreement reads as follows:

We, Adele M. Blow and F. W. Matthiessen, Jr., as executors of the last will and testament of Frederick W. Matthiessen, deceased, and Eda Matthiessen, Adele M. Blow and F. W. Matthiessen, Jr., as trustees under said will, hereinafter referred to as first parties, hereby assign, set over and deliver to Eda Matthiessen the bonds and securities listed in Schedule "A" hereto attached; to Adele M. Blow, the bonds and securities listed in Schedule "B" hereto attached; to F. W. Matthiessen, Jr., the bonds and securities listed in Schedule "C" hereto attached; to Merchants Loan & Trust Company, Trustee for Philip Matthiessen Chancellor, the bonds and securities listed in Schedule "D" hereto attached, subject to adjustment as to interest accrued up to Feb. 11, 1918.

We assign, set over and deliver to Eda Matthiessen, the stocks listed in Schedule "E" hereto attached; to Adele M. Blow the stocks listed in Schedule "F" hereto attached; to F. W. Matthiessen, Jr., the stocks listed in Schedule "G" hereto attached; to the Merchants Loan & Trust Company, Trustee for Philip Matthiessen Chancellor, the stocks listed in Schedule "H" hereto attached, reserving the right to impress the stocks of the Matthiessen & Hegeler Zinc Company, the La Salle & Bureau County R. R. Co., and the Western Clock Company with such trusts and conditions as we may hereafter designate.

We assign, set over and deliver to Geo. P. Blow, General Agent for the said Trustees, Eda Matthiessen and to Adele M. Blow, F. W. Matthiessen, Jr., and the Merchants Loan & Trust Company, Trustee for Philip Matthiessen Chancellor, the sums set opposite their respective names in Schedule "I" to be at once received by them.

We assign and set over to Eda Matthiessen, Adele M. Blow, F. W. Matthiessen, Jr., and the Merchants Loan & Trust Co., Trustee for Philip Matthiessen Chancellor, each one-fourth (¼) of the balance of the cash in the estate of said Frederick W. Matthiessen, deceased.

Said balance of said cash is transferred, as are also the bonds and securities in Schedule "J" hereto attached, to be devoted so far as necessary, by the recipients thereof, in equal parts to the payment of income taxes to become due June 15, 1918, federal and state inheritance taxes, and income taxes to become due June 15, 1919.

It is understood that the receipts given by the recipient of assets shall contain a refunding agreement, providing that they will refund pro rata to said executors, sufficient to cover all estate liabilities.

The first parties agree to execute such further instruments and writings as may be necessary to carry out any formalities connected with the transfers hereinabove made.

> (Signed)　　　ADELE M. BLOW,
> (Signed)　　　F. W. MATTHIESSEN, Jr.,
> *Executors of the Last Will and Testament of Frederick W. Matthiessen, Deceased.*
> (Signed)　　　EDA MATTHIESSEN,
> (Signed)　　　ADELE M. BLOW,
> (Signed)　　　F. W. MATTHIESSEN, Jr.,
> *Trustees Under Said Will.*

### SCHEDULE "A."

#### LIST OF SECURITIES * * *

Received from Eda Matthiessen, Adele M. Blow, and F. W. Matthiessen, Jr., as Trustees, under the will of Frederick W. Matthiessen, deceased, and Adele M. Blow and F. W Matthiessen, Jr., as Executors of said Estate, all the bonds set forth in pages one, two, three and four of this Schedule A: each page being identified by my signature. I hereby agree to promptly meet any assessment called for by the Executors of the Estate for estate liabilities.

Dated this thirteenth day of March, 1918, A. D.

> (Signed)　　　EDA MATTHIESSEN.

### SCHEDULE "B"

#### LIST OF SECURITIES * * *

Received from Eda Matthiessen, Adele M. Blow, and F. W. Matthiessen, Jr., as Trustees under the will of Frederick W. Matthiessen, deceased, and Adele M. Blow and F. W. Matthiessen, Jr., as Executors of said Estate, all the bonds set forth in pages one, two, three and four of this Schedule B; each page being identified by my signature. I hereby agree to promptly meet any assessment called for by the Executors of the Estate for estate liabilities.

Dated this thirteenth day of March, 1918, A. D.

> (Signed)　　　ADELE M. BLOW.

### SCHEDULE "C"

#### LIST OF SECURITIES * * *

Received from Eda Matthiessen, Adele M. Blow, and F. W. Matthiessen, Jr., as Trustees, under the will of Frederick W. Matthiessen, deceased, and Adele M. Blow and F. W. Matthiessen, Jr., as Executors of said Estate, all the bonds set forth in pages one, two, three and four of this Schedule C; each page being identified by my signature. I hereby agree to promptly meet any assessment called for by the Executors of the Estate for estate liabilities.

Dated this thirteenth day of March, 1918, A. D.

> (Signed)　　　F. W. MATTHIESSEN, Jr.

SCHEDULE "D"

LIST OF SECURITIES * * *

Received from Eda Matthiessen, Adele M. Blow, and F. W. Matthiessen, Jr., as Trustees, under the will of Frederick W. Matthiessen, deceased, and Adele M. Blow and F. W. Matthiessen, Jr., as Executors of said Estate, all the bonds set forth in pages one, two, three and four of this Schedule D; each page being identified by my signature. I hereby agree to promptly meet any assessment called for by the Executors of the Estate for estate liabilities.

Dated this thirteenth day of March, 1918, A. D.

(Signed)            THE MERCHANTS LOAN & TRUST COMPANY,
                            *As Trustee for Philip M. Chancellor*
                    *Under will of Frederick W. Matthiessen, deceased.*

By LEON L. LOEHR, *Secretary.*

During the period between March 13, 1918, and November 12, 1918, the attorneys for the estate took the necessary steps to adjust or provide for payment of the New Jersey and Illinois inheritance taxes and the Federal estate tax, to which the estate might be subject. The liabilities of the estate were as follows:

| | |
|---|---:|
| Specific charitable legacies | $300,000.00 |
| Expenses of funeral and last illness | 3,954.75 |
| Attorneys' fees | 149,548.45 |
| Expenses of administration | 99,207.36 |
| Debts of decedent | 618,840.58 |
| Federal estate tax | 1,520,560.15 |
| Total | 2,692,111.29 |

The beneficiaries assumed and paid their pro rata share of the liabilities of the estate in accordance with the agreement assigning the property of the estate to them, as set forth in the affidavit of F. W. Matthiessen, Jr., dated October 6, 1921, which affidavit reads in part as follows:

Affiant further states that on March 25th, 1918, an agreement was made by and between the said Eda Matthiessen, Adele M. Blow, Merchants Loan & Trust Company of Chicago, and this affiant, for the division in four equal parts of the personal estate bequeathed to them under said will, and in pursuance of said agreement said entire personal estate was distributed in four equal parts among said beneficiaries subject to the covenant and agreement of said four beneficiaries that they would share equally all expenses of the administration of said estate including the payment of all inheritance, transfer and estate taxes levied upon and against said estate by the various States and the Government of the United States, that said distribution was completed by January 23rd, 1919, with the exception of a few shares of stock of little value. Affiant further states that in accordance with the laws of the United States the executors of the said estate, Adele M. Blow and this affiant, on the 8th day of February, 1919, filed with the Collector of Internal Revenue, Chicago, Illinois, a return for the estate tax on said estate showing a total tax due of $1,324,483.42; that on August 5th, 1919, the four beneficiaries of said estate, namely, Eda Matthiessen, Adele M. Blow, Merchants Loan & Trust Company of Chicago, and

this affiant, through their attorneys, paid to the Collector of Internal Revenue at Chicago, Illinois, the amount of said estate tax, namely, $1,324,483.42, * * *

That the said $1,324,483.42 used in the payment of the said federal estate tax was paid and contributed by Eda Matthiessen, Adele M. Blow, The Merchants Loan & Trust Company, as Trustee, and this affiant in equal amounts, each contributing and paying in cash the sum of $331,120.85;

That in making such payments the beneficiaries used either the principal or income of that portion of the estate of Frederick William Matthiessen, deceased, distributed to the beneficiary as hereinabove set forth;

That during the year 1919 each of the beneficiaries filed his, her or its income tax return, each accounting for all income received for the year 1919 from the one-quarter of the estate and devised and bequeathed to such beneficiary and distributed as above stated; that the executors of the estate did not account for any part of such income or pay any tax thereon, and the executors did not use as a deduction any part of the amount paid for the federal estate tax; that the payment made on account of the federal estate tax was not used as a deduction by any of the beneficiaries because of the then effective regulations of the Commissioner of Internal Revenue forbidding such deduction.

F. W. MATTHIESSEN, Jr.

Subscribed and sworn to before me this 6th day of October, A. D. 1921.
[SEAL.]                         CUDDIE E. DAVIDSON, *Notary Public.*

At the time of his death the testator owned 6,000 shares of the preferred stock and 17,000 shares of the common stock of the Corn Products Refining Co. This stock stood in the name of the decedent at the time of his death and continued in his name until November 12, 1918. On that date 1,500 shares of the preferred stock and 4,250 shares of the common stock were transferred on the books of the company from the name of F. W. Matthiessen, Sr., to the name of F. W. Matthiessen, Jr., and certificates were issued to the latter. The taxpayer received the certificates on November 18, 1918, and on that day sold the stock on the New York Stock Exchange. During the period between the date of the death of the testator and November 12, 1918, the executors had possession of the certificates representing the said stock and collected all dividends on such stock during that period. The stock in question was listed in Schedule G of the agreement entered into by the executors and trustees on March 13, 1918.

On February 11, 1918, the preferred stock was valued at $94.50 per share and the common stock at $33.62½ per share. These values were accepted for the purpose of computing the amount of the Federal estate tax. On March 13, 1918, the market value of the preferred stock was $96⅝ per share and of the common stock $35⅜ to $36¼ per share. On November 12, 1918, the market value of the preferred stock was $101½ per share and of the common stock $46⅜ to $48⅛ per share. From the sale of the stock the taxpayer received $359,292.50.

In reporting his income for the year 1918, the taxpayer included, as profit derived from the sale of the stock in question, an amount equal to the difference between the selling price of the stock and the

market value as of November 12, 1918. The Commissioner has included in the income of the taxpayer for that year as profit derived from the sale of the stock the difference between the selling price and the value of the stock as of the date of the death of the testator.

On his original return for the year 1918, the taxpayer reported net income subject to surtax in the amount of $78,727.90, and no income subject to normal tax. Upon this income he paid a tax of $14,326.60, of which amount $95.05 was shown as income tax paid at the source. It is now stipulated by the parties to the appeal that, exclusive of the profit derived from the sale of the stock in question above, the correct amount of the net income of the taxpayer subject to surtax for the year 1918 is $72,725.90.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 15 days' notice, under Rule 50.

### OPINION.

LITTLETON: This appeal involves the determination of the amount of taxable gain derived by the taxpayer from the sale of stock received by him as residuary legatee under the will of his father.

Section 213 of the Revenue Act of 1918 provides, in part, as follows:

That for the purposes of this title (except as otherwise provided in section 233) the term "gross income"—

(a) Includes gains, profits, and income derived from salaries, wages, or compensation for personal service, * * * or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * *; but

(b) Does not include the following items, which shall be exempt from taxation under this title:

*         *         *         *         *         *         *

(3) The value of property acquired by gift, bequest, devise, or descent (but the income from such property shall be included in gross income) ; * * *.

Under these provisions so much of the sale price of the stock as represents its value when acquired by the taxpayer is not to be included in gross income but is to be taken as the basis for determining the gain derived from the sale of said stock. The question in the case is twofold: First, when was the stock acquired by the taxpayer, and, second, what was its value at the time of acquisition? With reference to the value of the stock there is no dispute. The parties have

stipulated its value as of the various dates involved, and that point needs no further consideration. With reference, however, to the date when the stock was acquired, there is no such accord between the parties.

In Webster's New International Dictionary the word "acquire" is defined as follows:

To gain by any means, usually by one's own exertions; to get as one's own; as, to acquire a title, riches, knowledge, good or bad habits.

Bouvier's Law Dictionary defines the word "acquire" in the following manner:

To make property one's own; to gain permanently. It is regularly applied to a permanent acquisition. A man is said to obtain or procure a mere temporary acquisition. It has been held to include a taking by devise; * * *.

It is contended on behalf of the Commissioner that the property in the stock was acquired by the taxpayer as of the date of the death of the testator and that the gain derived from the sale of the stock is the difference between its fair market value on the date of the testator's death and the sale price. As a basis for this contention, it is argued that the residuary legatees became vested with their respective interests in the residuum at the moment the will became operative and that the interests which vested at that time constitute the entire interests which the legatees received or could receive. It is contended by the counsel for the taxpayer, however, that the property vested in the executors under the will and that the stock was not acquired by the taxpayer until the estate was administered and the assets distributed. In Schouler on Wills, Executors, and Administrators, vol. 3, p. 1997, the following appears:

§2051. * * * The title to the assets of a decedent which vests in his representative is that which the decedent had in his lifetime.

§2052. * * * The title of the executor or administrator, as representative, extends so completely to all personal property left by the decedent as to exclude creditors, legatees, and all others interested in the estate. They cannot follow such property specifically into the hands of others, much less dispose of it; but the executor or administrator is the only true representative thereof that the law will regard.

* * * The representative's claim to such assets is of course superior to that of heirs, distributees, or residuary legatees, so long as the estate remains unsettled.

Section 2061 on page 2002 of the same volume states:

The legal and equitable title to all the personal property of the deceased, including choses in action and incorporeal rights, vests in fact in the executor or administrator, as against all others, during the suitable period for administration, and he holds this property as a trustee and proper representative of all parties interested therein, wherever such property may be situated, and whether such personalty is in the possession of the decedent at death or is recovered by the representative thereafter.

In Corpus Juris, vol. 24, pp. 201, 202, appears the following:

The common-law rule, which is still the general rule on the subject, is that the title to personal property of a decedent, testate or intestate, vests in the personal representative until administration is completed and the estate fully settled or distributed, or until he chooses or becomes forced to part with it earlier; and the rule applies to contingent as well as absolute interests of decedent in personal property, whether of a corporeal or incorporeal description, including rights in bonds, contracts, and choses in action, as well as goods and chattels.

The title of the executor or administrator is exclusive, he being the only representative recognized by law in regard to personal assets; and even property specifically bequeathed vests in him subject to distribution, as in cases of intestacy.

So well settled is the rule that the executor or administrator has the title and the right to possession of the property of the decedent during the period of administration that it was held by the Supreme Court of Wisconsin, in *Palmer* v. *O'Rourke*, 110 N. W. 389, that, where an heir has possessed himself of a fund and converted the same to his own use, the administrator has an absolute right to recover the value thereof from such heir, though the latter may thereafter be entitled to have a portion of the fund distributed to him. See also *People ex rel. Gould* v. *Barker*, 44 N. E. 785; *Ritchie* v. *Barnes*, 86 N. W. 48; *Bailey* v. *Merchants' Ins. Co.*, 86 Atl. 328; and *People* v. *Brooks*, 14 N. E. 39.

In *United States* v. *Jones*, 236 U. S. 106, 112, the court said:

It hardly needs statement that personal property does not pass directly from a decedent to legatees or distributees, but goes primarily to the executor or administrator, who is to apply it, so far as may be necessary, in paying debts of the deceased and expenses of administration, and is then to pass the residue, if any, to legatees or distributees. If the estate proves insolvent nothing is to pass to them. So, in a practical sense their interests are contingent and uncertain until, in due course of administration, it is ascertained that a surplus remains after the debts and expenses are paid. Until that is done, it properly cannot be said that legatees or distributees are certainly entitled to receive or enjoy any part of the property. The only right which can be said to vest in them at the time of the death is a right to demand and receive at some time in the future whatever may remain after paying the debts and expenses.

It is true the taxpayer did acquire a right on the death of the testator, but that right was not a property right in the stock which was the subject matter of the transaction involved in this appeal. The most that the taxpayer, as residuary legatee, could demand at the time of the death of the testator was a proper administration of the estate and a distribution of such assets as remained after all debts and claims were settled. *Irwin* v. *Sample*, 72 N. E. 687; *Norton* v. *Lilley*, 96 N. E. 351; *United States* v. *Jones, supra; Anderson* v. *Shepard,* 121 N. E. 215; *In re Waban Rose Conservatories,* 106 N. E. 137.

From the authorities cited it appears that, although the taxpayer had a right to the proper administration of the estate and to a proportionate share of the residue remaining, he had no right or title in the stock in question until distribution was made by the executors. The date on which he acquired the property in the stock was the date of its distribution, and any amount representing an increase in the value of the stock between the date of the death of the testator and the date of such distribution should not be included in the income of the taxpayer.

That such was the intention of Congress seems to be confirmed by the provisions of section 219, which reads in part as follows:

(a) That the tax imposed by sections 210 and 211 shall apply to the income of estates or of any kind of property held in trust, including—

(1) Income received by estates of deceased persons during the period of administration or settlement of the estate;

*　　*　　*　　*　　*　　*　　*

(c) In cases under paragraph (1) * * * of subdivision (a) the tax shall be imposed upon the net income of the estate or trust and shall be paid by the fiduciary, except that in determining the net income of the estate of any deceased person during the period of administration or settlement there may be deducted the amount of any income properly paid or credited to any legatee, heir or other beneficiary. * * *.

From these provisions it appears that Congress recognized that the property of a decedent vested in the executor or personal representative during the period of administration and provided, in order that such estates might not escape taxation, that any gain derived during such period should be paid by such executor or personal representative. With reference to the stock in the instant case there was no transaction prior to distribution from which taxable gain resulted, even though it is clear that its value increased during that period and was greater at the time of the distribution than at the time of the death of the testator. This does not affect the income of the taxpayer, inasmuch as section 213 of the Act excludes from gross income the value of the property as of the date it was acquired, which was the date of distribution.

The question now arises as to whether the stock was distributed on March 13, 1918, the date of the agreement of distribution, or on November 12, 1918, the date when the stock was actually transferred on the books of the corporation.

Counsel for the taxpayer contend that the executors could not under the law distribute the assets of the estate prior to the probate of the will and their qualification as executors or prior to payment of the debts of the estate. On the basis of these contentions it was argued that the agreement of March 13, 1918, was in effect nothing more than an agreement fixing a method of distribution which as to

the stock in question was actually made on November 12, 1918, when the said stock was transferred on the books of the corporation.

In this case, however, we are not passing on the question as to the proper method of administering estates, but upon the tax liability of the taxpayer as determined by the transactions which actually occurred. When we consider that the executor and legatee in this particular case were the same person it is hard to conceive of a more formal and complete assignment and delivery of his distributive share of the assets of the estate than the agreement of March 13, 1918. With reference to the stock in question, the words of the agreement were "We assign, set over and deliver * * * the stocks listed, etc." Such a declaration is certainly sufficient to show that the taxpayer no longer considered that he held the stock as executor, but that he held it in his individual capacity. The certificates of stock were in his possession, and under the agreement he could have delivered it to the corporation for transfer at any time thereafter.

With reference to the argument that the agreement was made before the will was probated and the executors qualified, it should be noted that when executors do qualify their title to the property of the estate relates back to the date of the death of the testator. In *Pinkham v. Grant*, 3 Atl. 179, the court held that where a person named in a will as executor paid to a legatee a legacy under the will prior to the probate thereof and prior to his qualification as executor, the probate of the will and his appointment and qualification as executor related back by construction to the death of the testator and validated the payment.

Corpus Juris, vol. 24, pp. 498, 499, states:

Voluntary payments to distributees without any order or decree of court authorizing the same are made by the representative at his own peril, although the representative acted in good faith in making such payments, and in ignorance of the existence of any debt or claim against the estate. Such distribution is, however, perfectly legal and divests the personal representative of title to the property delivered to the legatee or distributee. Furthermore the representative may be entitled to credit for the payments made, if they are correct and not more than the recipient's distributive share, and will be protected by a subsequent decree authorizing such payments, or allowing an account in which such payments are stated.

See *Burnes v. Burnes*, 137 Fed. 781; *Parker v. Wilson*, 136 S. W. 981; and *Parks v. Knox*, 130 S. W. 203.

It is noted that where distribution is actually made the executor is divested of title to the property of the estate and that title vests in the legatees. The creditors are not without remedy, however, since the executor becomes personally liable to creditors prejudiced by such distribution. In the instant case the executors protected themselves by inserting in the agreement of distribution a clause

whereby the beneficiaries were required to satisfy, pro rata, the liabilities of the estate. The creditors may also, under certain circumstances, have recovery against the distributees. But with these remedies we are not here concerned, since the beneficiaries fulfilled that part of the agreement which required them to pay, pro rata, the debts of the estate, and it does not appear that the legatees were ever disturbed in their possession and enjoyment of the property received under the agreement. Under these circumstances, we must hold that the stock in question was acquired by the taxpayer on March 13, 1918.