## C. M. HALL LAMP CO. v. UNITED STATES.

### Nos. 11557, 11558.

United States Court of Appeals
Sixth Circuit.

Feb. 7, 1953.

Howell Van Auken, Detroit, Mich. (Lucking, Van Auken, Schumann & Greiner, Detroit, Mich., on the brief), for C. M. Hall Lamp Co.

Morton K. Rothschild, Washington, D. C. (Ellis N. Slack, Morton K. Rothschild, Washington, D. C., Philip A. Hart, Roger P. O'Connor, Detroit, Mich., on the brief), for the United States.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, C. M. Hall Lamp Company, hereinafter called the Hall Company, filed this action in the District Court to recover $751.92, which it alleged was erroneously assessed against it and collected as excess profits taxes for the calendar year 1941. The assessment resulted from the disallowance by the Commissioner of a good will asset item in the appellant's invested capital account. The ruling is of importance to the appellant because of its application to appellant's excess profits tax liability for the years succeeding 1941 as well as the year 1941 itself.

By written contract of June 28, 1926, the Hall Company agreed to purchase the assets, business and good will, of Edmunds and Jones Corporation of New York, hereinafter referred to as the E. & J. Corporation, as a going concern as of January 1, 1926, with the operations of the E. & J. Corporation from January 1, 1926 until the date of the transfer of its assets being conducted for the account and benefit of the ap-

pellant. Thereafter, the E. & J. Corporation was to be dissolved, with distribution among its shareholders of the cash and stock of the appellant received by it through the sale. In addition to assuming the debts and obligations of the E. & J. Corporation, as shown upon its books as of January 1, 1926, and all claims for damages occurring in the conduct of its business, although not shown on the books, the Hall Company agreed, as payment under the contract, to provide sufficient cash to enable the E. & J. Corporation to redeem all of its outstanding preferred stock at $120 per share; to make a payment of $5.00 in cash for each share of the E. & J. Corporation's outstanding common stock; and, its shareholders having taken the necessary formal action to increase its authorized amount of common stock from 200,000 shares without par value to 500,000 shares without par value, to pay to the E. & J. Corporation 160,000 shares of such increased capital stock. The Hall Company also agreed to pay an extra cash dividend of $2.50 per share on its own common stock outstanding at that time, or in lieu thereof to distribute a stock dividend of 20%. The stock dividend was declared and certificates therefor were issued on September 20, 1926.

On July 2, 1926, the Hall Company deposited with the Merchants National Bank of Detroit cash and securities sufficient to provide for the redemption of the E. & J. Corporation's preferred stock. The securities were converted into cash and sufficient cash remitted to a stock redemption agent to redeem the preferred stock. On October 11, 1926, the Hall Company completed its cash payments as called for by the purchase contract, totaling the amount of $866,108.37, and at that time also delivered to the E. & J. Corporation the certificates for 160,000 shares of its own capital stock which was the remaining unperformed portion of its purchase obligation.

The balance sheet of the E. & J. Corporation as of January 1, 1926 listed assets valued at $2,511,136.35, but showed no item of good will. These assets were revalued by the Hall Company as of January 1, 1926 at $2,390,931.36, which revaluation also omitted any reference to any item of good

will. This revaluation amount was subject to correction by deduction of a tax deficiency for 1924–1925, subsequently determined to be $4,647.81, and a further deduction of $178,987.28 as losses of the E. & J. Corporation during the first six months' period of 1926, leaving a balance of $2,207,-296.27 as the balance sheet value of the assets of the E. & J. Corporation at the time the Hall Company acquired them.

During June 1926, the Hall Company stock, listed on the Detroit Stock Exchange, was traded in on said Exchange at a low of $14.00 per share and a high of $16.00 per share. On June 28, 1926, it was traded in at a low of $14.00 per share and a high of $14.00 per share. A witness for the appellant testified that, after giving effect to the 20% stock dividend, which the corporation was committed to declare, the value of the 160,000 shares of stock delivered to the E. & J. Corporation, as of June 28, 1928, was 11⅔ dollars per share. On October 11, 1926, it was traded in at a low of $9.00 per share and a high of $9.00 per share.

In its tax return for the year 1941, appellant included in its invested capital, for excess profits tax purposes, an item of $646,-078.07, representing good will purchased from the E. & J. Corporation in 1926. Disallowance of this item by the Commissioner resulted in the present suit. Under the facts as stipulated in the suit, appellant has reduced its claim for the good will item to $525,478.76. Appellant's claim is based upon the following theory and computation. It received from the E. & J. Corporation tangible assets of an agreed value of $2,207,296.27, as hereinabove shown. It paid to the E. & J. Corporation under its contract of purchase the sum of $2,732,-775.03, made up of the following items: Cash $866,108.37 and 160,000 shares of its stock, valued at 11⅔ dollars per share as of June 28, 1926, for a total value of $1,866,-666.66. Deducting the value of the tangible assets from the total purchase price paid for assets and good will, it leaves a balance of $525,478.76 as the portion of the total purchase price which was paid for good will. The Government contends that the appellant was not entitled to include any good will item in its invested capital be-

cause the purchase agreement placed no value on the E. & J. good will and no such item was set up on the books of the appellant after the purchase was consummated. The Government also contends that in any event the value of the Hall Company stock should be computed as of October 11, 1926, the date when the stock certificates were actually delivered, at which time the stock was of a value of $9.00 per share, as contrasted with the 11⅔ dollars per share used by the appellant in calculating the total amount of its purchase price. On such a basis the good will item amounted to $98,-812.10, instead of $525,478.76, as claimed by the appellant.

The District Judge rejected the Government's contention that the appellant was not entitled to include an item of good will in its invested capital, but sustained the Government's contention that in computing its value the 160,000 shares of stock in the Hall Company should be valued at $9.00 per share, at which price it sold on October 11, 1926, rather than the higher value of 11⅔ dollars per share on June 28th. The Hall Company appealed from the ruling, and the Government has taken a cross-appeal.

■ The Government relies strongly on Landesman-Hirschheimer Co. v. Commissioner, 6 Cir., 44 F.2d 521, from this Circuit. The Court there held, under a somewhat similar sale of business assets, that in order to warrant the inclusion by the purchaser of good will as an intangible asset included in the purchase of a going business, a valuation must be placed upon it as of the time it is acquired, and such valuation must have consciously formed the consideration for, and operated to discharge the subscriber's liability arising out of, the issue of a specific amount of capital stock. The Court pointed out that that which is given to the corporation without this consideration of stock issued, or without the specified quid pro quo, is not to be considered as augmenting the original invested capital. We think the District Judge correctly refused to apply the rule announced in that case to the present case, because of the existence of differentiating facts. In the Landesman case, assets of a book value of $273,346.21, which included no item of good

will, were turned over to the purchaser in return for $249,000 par value of capital stock. The Court held that the good will although passing to the corporation, was not purchased by it and did not become part of the cost. LaBelle Iron Works v. United States, 256 U.S. 377, 388, 41 S.Ct. 528, 65 L.Ed. 998. In the present case, the contract of purchase provided that the Hall Company bought and the E. & J. Corporation sold "the entire assets, business and good will as a going concern of the E. & J. Corporation as of January 1, 1926." Accordingly, the good will was specifically included as one of the items purchased in the present case, and although no specific allocation of value was made to it by the contract, it becomes merely a matter of mathematical calculation to determine what that value was. Also, in the Landesman case, the consideration paid by the purchasing corporation was stock only, which, under the 1918 statute, was permitted to be included in invested capital only to the amount of its par value. In the present case, cash in a material amount constituted part of the consideration, and the restrictive provisions of the 1918 statute were not in effect.

In determining the taxpayer's invested capital for purposes of the excess profits tax, § 718 of the Internal Revenue Code, § 718, Title 26 U.S.Code, provides for the inclusion of—

"(1). Money paid in. Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

"(2). Property paid in. Property (other than money) previously paid in * * * for stock * * *. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange."

Under § 113 of the Internal Revenue Code, 26 U.S.C. § 113, such a basis to the appellant was cost. § 30.718–1 of Treasury Regulations 109, relating to the excess profits tax, with respect to the valuation of property included in the taxpayer's invested capital, provides in part—

"If the basis to the taxpayer is cost, and stock was issued for the property,

the cost is the fair market value of such stock · at the time of its issuance. * * * "

See Ushco Mfg. Co. v. Commissioner, 2 Cir., 151 F.2d 821, 823. The District Judge, in applying the foregoing Regulation, held that the fair market value of the stock "at the time of its issuance" was its fair market value on October 11, 1926, the date on which the certificates were finally issued and delivered to the E. & J. Corporation. Appellant concedes that the Regulation is controlling and that under it the 160,000 shares of its stock is to be valued at its fair market value "at the time of its issuance," but contends that the words properly construed mean the time when the E. & J. Corporation became the legal owner of the stock rather than the time when the certificates therefor were physically made out and delivered.

■ We agree with the contention of the appellant. Under well established principles of corporate law a purchaser of stock from the issuing corporation becomes a stockholder at the time a binding contract of purchase has been entered into, the physical issuance of the stock certificate later being merely the delivery of the formal paper evidencing his interest as a stockholder. U. S. Radiator Co. v. New York, 208 N.Y. 144, 149, 101 N.E. 783, 46 L.R.A.,N.S., 585; Hawley v. Upton, 102 U.S. 314, 316, 26 L.Ed. 179; De Loach v. Bennett, 156 Ga. 633, 119 S.E. 592; Burchett v. Louisa Light & Power Co., 235 Ky. 296, 300, 31 S.W.2d 373; Cartwright v. Dickinson, 88 Tenn. 476, 482, 12 S.W. 1030, 7 L.R.A. 706; The American Pig Iron Storage Co. v. State Board of Assessors, 56 N.J.L. 389, 29 A. 160; Illinois-Indiana Fair Association v. Phillips, 328 Ill. 368, 159 N.E. 815, 59 A.L.R. 591; Bethea v. Allen, 177 S.C. 534, 181 S.E. 893, 102 A.L.R. 320, certiorari denied 296 U.S. 622, 56 S.Ct. 143, 80 L.Ed. 442.

■ This is in accord with the well settled law of sales, that where there is an unconditional contract to sell specific goods in a deliverable shape, the property in the goods passes to the buyer when the contract is made, and it is immaterial that the time of payment, or the time of delivery, or both, be postponed. Briggs v. United States, 143 U.S. 346, 354, 12 S.Ct. 391, 36 L.Ed. 180; Uniform Sales Act, § 19, Rule 1. If title passes to the purchaser, and the purchaser becomes a stockholder, at the time of the making of the contract, it would necessarily follow that any destruction of the property or any loss in value would fall upon the purchaser who was the owner of the legal title. William R. Huntley, 30 B.T.A. 931, 934. The purchaser of stock pays his contract price therefor, not the market value of the stock at a later date when the certificate is physically issued and delivered to him.

■ Under the foregoing well settled rules in transactions involving the purchase and sale of property, we are of the opinion that the cost of the property acquired by the appellant was the value of what it gave in exchange for it at the time when the contract became a binding obligation, and that the 160,000 shares of appellant's stock was legally issued to the E. & J. Corporation at that time, rather than at the date when the certificates were made out and delivered. H. J. Heinz Co. v. Driscoll, D.C.Pa., 37 F.Supp. 803; Blythe v. Doheny, 9 Cir., 73 F.2d 799, 803; Edw. R. Bacon v. Commissioner, 4 C.C.H. Tax Court Memo., decisions 868 through 874; affirmed 9 Cir., 158 F.2d 981; William R. Huntley, 30 B.T.A. 931; Emma W. Davis, 32 B.T.A. 943. The construction contended for by the appellee would result in a variable cost to the taxpayer, subject to subsequent developments over which it had no control, with a resulting uncertain and variable tax liability depending upon whether the market value of the stock advanced or declined in price. A taxpayer should be entitled to predetermine his tax liability in a specific legally completed transaction by a more certain and definite standard than such a variable.

The Government filed a counter-claim in the District Court for the purpose of offsetting against any recovery which the appellant might make a claimed tax liability against the appellant, direct enforcement of which was barred by the statute of limitations. The claim arose as the result of

acquisition by appellant in 1929 and 1930 of certain bonds, which later became in default and were replaced by refunding bonds issued by the debtor corporations, which raised an issue of the proper cost basis to appellant when the principal of the refunding bonds was later received by the appellant. The District Judge dismissed the counter-claim and entered a judgment which provided for a recovery by the appellant of $751.92 with interest. Due to certain stipulations which the appellant made during the trial in the District Court, it concedes and asks on this appeal that the counter-claim be sustained to the extent necessary to operate as a set-off against appellant's recovery. Under such circumstances, it becomes unnecessary for this Court to review the ruling on the counter-claim, and the District Court can give it its proper effect as per stipulation of the parties upon the entry of a new judgment following remand.

The judgment is reversed and the action remanded to the District Court for the entry of a new judgment computed in accordance with the views expressed herein.